## WILLIAMSON et al. v. UNITED STATES.

United States Court of Appeals
Second Circuit.

Sept. 25, 1950.

Mr. Justice JACKSON, as Circuit Justice for the Second Circuit:

These Communist Party leaders were convicted for conspiring to advocate and teach the violent overthrow of the United States Government and to organize the Communist Party for that purpose.[1] They were not charged with any attempt or with any overt act toward that end other-

1. The prosecution was under the Smith Act, 54 Stat. 670, 671, 18 U.S.C. § 2385, 18 U.S. C.A. § 2385.

than those incident to such organization and teaching.

Defendants appealed and, after denial of bail by the trial court, applied to the Court of Appeals for its allowance. Government counsel conceded that the appeal presented a substantial question and upon that concession defendants were enlarged upon bond.[2]

After the Court of Appeals affirmed the convictions,[3] defendants expressed an intention to petition the Supreme Court to review their cases. The prosecution asked that bail be revoked and defendants remanded to jail. Two grounds were advanced: first, that no substantial question as to the validity of the conviction survived the affirmance, and second, that defendants, while at large, *have pursued* and *will continue to pursue* a course of conduct

and activity dangerous to the public welfare, safety and national security of the United States. The Court of Appeals did not summarily terminate bail but a majority of the judges extended it for thirty days, expressly to enable application to the Circuit Justice for further extension. Chief Judge Hand, who had written the principal opinion affirming the convictions, said he regarded the case as "involving substantial questions and therefore entitling the defendants to remain on bail pending certiorari."

To remain at large, under bond, after conviction and until the courts complete the process of settling substantial questions which underlie the determination of guilt cannot be demanded as a matter of right. It rests in sound judicial discretion.[4] Only in a rare case will I override

2. The November 2, 1949 order of the Court of Appeals, allowing bail, recites, "The prosecution having upon argument conceded that the appeal herein raises a 'substantial question,' (Rule 46(a) (2) of the Rules of Criminal Procedure [18 U.S.C.A.]), it is ordered * * * ."

3. United States v. Dennis et al., 2 Cir., 183 F.2d 201.

4. Rule 46(a) (2) of the Federal Rules of Criminal Procedure provides: "Right to bail upon review. Bail may be allowed pending appeal or certiorari only if it appears that the case involves a substantial question which should be determined by the appellate court. Bail may be allowed by the trial judge or by the appellate court or by any court thereof or by the circuit justice. The court or the judge or justice allowing bail may at any time revoke the order admitting the defendant to bail."

Defendants contend that, where a substantial question exists, bail is a matter of right. They rely upon a decision by the Court of Appeals, Ninth Circuit, in Bridges v. United States, 184 F.2d 881, August 24, 1950, upon an opinion by Mr. Justice Douglas allowing bail to "Tokyo Rose" convicted of treason, D'Aquino v. United States, 9 Cir., 180 F.2d 271, and upon several older cases decided before the current rule was promulgated.

I cannot accept this view that presence of a substantial question makes bail mandatory and, in order not to mislead the judges of my Circuit, set forth my

reasons for thinking the Rule permits bail only in circumstances warranted by sound judicial discretion.

The unpublished history of the rule in the files of this Court shows that the Advisory Committee submitted it to this Court with this language in the first line, "Bail *shall* be allowed * * * ." (Italics supplied.) By letter of December 21, 1944, Chief Justice Stone returned the proposed rules, stating that the word "shall" should be changed to "may." It is apparent that the language of the rule was not casual or loose and that the basis for claiming bail as a matter of right was deliberately eliminated. Although Rule 46 was a restatement of the existing law, the third sentence is new. In a note attached to an early draft, the following comment was made: "The discretionary power to admit to bail pending appeal is made explicit in the new closing sentence," citing Rossi v. United States, 8 Cir., 1926, 11 F.2d 264.

Further, it is to be noted that "may" is used three times in the rule, once in each of the three sentences. I should hardly suspect that this Court used the word with inconsistent meanings—twice to mean "must", an once to mean "may." The only consistent meaning is that "may" means just that; the judge is empowered to use his own best judgment as to whether a defendant should be free on bail.

But the exercise of this discretion is very limited, as the cases prior to Bridges and D'Aquino point out. The existence of a substantial question is an absolute

a clear and direct decision by the Court of Appeals that bail ought to be granted or denied. But here one judge favored its allowance, and the action of his two associates in granting a thirty-day extension implied the continuing power to grant bail, which is dependent on persistence of a substantial question and indicated that they did not regard the defendants as presenting a very immediate public danger.[5]

■ I cannot accept the Government's first contention that no substantial quesion survives for Supreme Court review. If, as the prosecution conceded, the convictions once were clouded by a substantial constitutional question, it has not completely disappeared, even though the Court of Appeals has now given its own carefully considered answer. An intermediate court, however respected its members or persuasive its opinion, makes no final answer or at least no answer of uniform authority throughout the United States to a constitutional issue. Certainly had the Court of Appeals reached a contrary conclusion, the Government would not have accepted it as final. It is one thing to maintain that the Court of Appeals has

given the right answer to a substantial question, but it is another thing to contend that there is no question which merits answer by the only Court invested with ultimate and nation-wide authority in the matter. I regard the case as one in which substantial questions are open to review by the Supreme Court, and in which I am therefore empowered to grant bail, as ordinarily would be done.

■ The Government's alternative contention is that defendants, by misbehavior after conviction, have forfeited their claim to bail.[6] Grave public danger is said to result from what they may be expected to do, in addition to what they have done since their conviction. If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes.[7] Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary ju-

prerequisite to bail, and in the usual case that is the only issue involved. And the courts, quite understandably, have been liberal (sometimes I think too liberal) in the decision of this question because they felt that, if the conviction were to be reversed, appellant should not have been jailed in the interim.

Whatever the rule of the Circuit Justices and the Courts of Appeals of other Circuits, the rule I shall observe and presume to have been observed in the Second Circuit is that existence of a substantial question is a prerequisite to bail after conviction; the question should be substantial in the sense of fairly doubtful and in the sense also that it is not trivial or merely technical but has substantial importance to the merits; finding this, bail remains an appeal to the discretion of the court.

5. The majority said, "The motion of the United States to revoke bail is granted as of thirty days from the filing of this order, with leave granted to the appellants during such 30 days to apply to the Circuit Justice for bail pending certio-

rari." The order was filed August 28, 1950.

6. I think the rule clearly contemplates consideration of such matters, because, as it expressly provides, "The court or the judge or justice allowing bail may at any time revoke the order admitting the defendant to bail." Of course there are cases where, after allowance, decision of the contested question will remove it from the category of substantial. But power to revoke is not confined to such cases. I think any changed or newly discovered circumstance that affects the justice of the confinement may be considered.

7. There are ways of dealing with certain threats to commit crime. In these cases the law only imprisons in default of furnishing an undertaking, but the person held is released if he furnishes the required undertaking to abide the court's order and "keep the peace." New York Code of Criminal Procedure, §§ 84–99; assimilated into Federal Law, 36 Stat. 1163, 18 U.S.C. § 3043, 18 U.S.C.A. § 3043.

dicial technique to supplement conviction of such offenses as those of which defendants stand convicted.

■ Turning then to past, but postconviction, activities said to be dangerous, I find them to consist entirely of making speeches and writing articles or editorials, chiefly for the Communist Party organ the Daily Worker. They do not contain any advocacy of violent overthrow of the Government and can only be said to be inciting, as all opposition speaking or writing that undermines confidence and increases discontent may be said to be incitement. These, however, are severely critical of the policy of the United States toward Korea and favorable to the Soviet position. Some are crudely intemperate, contain falsehoods obvious to the informed, and all are plainly designed to embroil different elements of our society and embarrass those who are presently conducting the Government. But the very essence of constitutional freedom of press and of speech is to allow more liberty than the good citizen will take. The test of its vitality is whether we will suffer and protect much that we think false, mischievous and bad, both in taste and intent.

■ It is not contended that these utterances, in themselves, are criminal.[8] The Communist Party has not been outlawed either by legislation, nor by these convictions, and its right to publish the Daily Worker is not questioned. Nor were defendants indicted under that part of the statute which prohibits publication of matter intended to cause overthrow and destruction of government. Since the paper may lawfully be issued, certainly its publishers or contributors may comment critically on the Government's conduct of foreign affairs. If the Government cannot get at these utterances by direct prosecution, it is hard to see how courts can justifiably reach and stop them by indirection. I think courts should not utilize

their discretionary powers to coerce men to forego conduct as to which the Bill of Rights leaves them free. Indirect punishment of free press or free speech is as evil as direct punishment of it. Judge Cardozo wisely warned of "the tendency of a principle to expand itself to the limit of its logic." [9] If the courts embark upon the practice of granting or withholding discretionary privileges or procedural advantages because of expressions or attitudes of a political nature, it is not difficult to see that within the limits of its logic the precedent could be carried to extremities to suppress or disadvantage political opposition which I am sure the Department itself would deplore.

It is said, however, that freedoms of speech or press cannot be invoked by defendants because their speeches and publications constitute a repetition of their offenses and a continuation of the conspiracy of which they have been convicted. If all that convicted these defendants was such utterances as have followed their conviction, there would indeed be doubt about its validity, for I am unable to find in them any word of advocacy of violence either to overthrow the Government or of forcible resistance to its policy. If that inference can be drawn from these utterances, it can equally well be drawn from many other opposition speeches by non-Communists. Another difficulty with the Government's position, pointed out by Judge Hand in the hearing below, is that while a substantial question exists as to whether they have been lawfully convicted it is equally doubtful whether repetition, if it be such, is a crime.

My task would be simple if a judge were free to order persons imprisoned because he thinks their opinions are obnoxious, their motives evil and that free society would be bettered by their absence. The plea of admitted Communist leaders for liberties and rights here, which they deny

---

8. The Smith Act purports to authorize prosecution of publication with intent to cause overthrow of the Government. Section 2(a) (2), 54 Stat. 671. These defendants were not indicted under this

section and there has been no direct finding that the Daily Worker is published in violation of law.

9. Cardozo, Nature of the Judicial Process, p. 51.

to all persons wherever they have seized power, is so hypocritical that it can fairly and dispassionately be judged only with effort.

But the right of every American to equal treatment before the law is wrapped up in the same constitutional bundle with those of these Communists. If in anger or disgust with these defendants we throw out the bundle, we also cast aside protection for the liberties of more worthy critics who may be in opposition to the government of some future day.

If, however, I were to be wrong on all of these abstract or theoretical matters of principle, there is a very practical aspect of this application which must not be overlooked or underestimated—that is the disastrous effect on the reputation of American justice if I should now send these men to jail and the full Court later decide that their conviction is invalid. All experience with litigation teaches that existence of a substantial question about a conviction implies a more than negligible risk of reversal. Indeed this experience lies back of our rule permitting and practice of allowing bail where such questions exist, to avoid the hazard of unjustifiably imprisoning persons with consequent reproach to our system of justice. If that is prudent judicial practice in the ordinary case, how much more important to avoid every chance of handing to the Communist world such an ideological weapon as it would have if this country should imprison this handful of Communist leaders on a conviction that our own highest Court would confess to be illegal. Risks, of course, are involved in either granting or refusing bail. I am not naive enough to underestimate the trouble-making propensities of the defendants. But, with the Department of Justice alert to the dangers, the worst they can accomplish in the short time it will take to end the litigation is preferable to the possibility of national embarrassment from a celebrated case of unjustified imprisonment of Communist leaders. Under no circumstances must we permit their symbolization of an evil force in the world to be hallowed and glorified by any semblance of martyrdom. The way to avoid that

risk is not to jail these men until it is finally decided that they should stay jailed.

Their bail as fixed by the Court of Appeals is therefore continued until the Supreme Court of the United States shall deny their petition for certiorari or, if it be granted, shall render judgment upon their cause.