STATE of South Dakota, Plaintiff and Applicant,

v.

Russell MEANS, Defendant and Respondent.

No. 11826.

Supreme Court of South Dakota.

Argued Aug. 16, 1977.

Decided Sept. 9, 1977.

Rehearing Denied Sept. 30, 1977.

Gary J. Pashby, Special Deputy State's Atty., Minnehaha County, Sioux Falls, for plaintiff and applicant; William J. Janklow, Atty. Gen., Pierre, on the brief.

Kenneth E. Tilsen, St. Paul, Minn., Sidney B. Strange, Sioux Falls, for defendant and respondent; William M. Kunstler, New York City, of counsel.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., John H. Davidson, Jr., Vermillion, amicus curiae.

DUNN, Chief Justice (on reassignment).

This is a proceeding brought by the state for the revocation of defendant's bond on appeal.

On April 30, 1974, a disturbance occurred at the Minnehaha County Courthouse in Sioux Falls, South Dakota, during the trial of Robert High Eagle, Sarah Bad Heart Bull and Kenneth Dahl on charges arising out of an alleged riot that had occurred on February 6, 1973, in Custer, South Dakota. As a result of the April 30, 1974 disturbance, defendant was indicted on charges of rioting to obstruct justice, SDCL 22–10–4, and injury to a public building, SDCL 22–34–3.1. These indictments were later dismissed and defendant was charged by information with the crime of "rioting to obstruct." SDCL 22–10–4.

After an attempt had been made to select a jury, defendant requested trial to the court. Following a lengthy trial, the court on December 15, 1975, announced its oral verdict finding defendant guilty of the crime charged, and on December 31, 1975, the court entered a judgment of conviction and sentenced defendant to a term of four years in the state penitentiary. On that same day, defendant filed a notice of appeal to this court and made a motion to the circuit court for an order admitting him to bail pending appeal. On January 6, 1976, the trial court entered its order admitting defendant to bail on certain conditions, including the following:

"4. That defendant will refrain from participating in any American Indian Movement activities except the following:

(a) Fund raising,

(b) The International Indian Treaty Organization,

(c) and activities of the American Indian Movement within the courts.

\*     \*     \*     \*     \*     \*

8. The bail will be revoked if the defendant is convicted of any criminal charge presently pending against him.

\*     \*     \*     \*     \*     \*"

The conditions also included the requirement that defendant report to a court service worker in person or by telephone every fifteen days with a detailed account of his

itinerary and proposed activities for the following fifteen-day period, and the requirement that at least every sixty days defendant should personally present himself to the court service worker department at Sioux Falls to make such report.

On January 5, 1977, the state filed an application for an order revoking bail, alleging that defendant had violated two of the conditions of the order admitting him to bail. On January 26, 1977, this court remanded the case to the circuit court and directed the trial judge who had tried and sentenced defendant to conduct an evidentiary hearing as referee. Following an evidentiary hearing, the referee filed his report and findings of fact and conclusions of law. The referee found that defendant had violated the provisions of conditions 4 and 8 of the order admitting defendant to bail. The referee made no recommendation on whether bail should be revoked.

In response to the state's motion, defendant has filed an application asking that we amend the order admitting him to bail by striking conditions 4 and 8.

We turn, then, to the evidence in support of the referee's findings.

The referee found, and there is no dispute on this matter, that on January 6, 1976, there was pending against defendant in Morton County, North Dakota, an information charging defendant with aggravated assault and battery. On November 23, 1976, the district court of North Dakota, Sixth Judicial District, granted a motion made by the state of North Dakota to dismiss that felony charge and to allow the filing of an information on the lesser included offense of assault. On that same day, the state's attorney of Morton County filed an amended information charging defendant with the misdemeanor crime of assault based upon the same incident that gave rise to the original felony charge. Defendant was convicted on his written plea of guilty to the charge contained in the amended information and was sentenced to thirty days in jail and a $100 fine, together with certain restitution. The jail sentence was suspended for a period of eighteen months, the fine was paid, and the restitution made.

■ On the morning of November 1, 1976, Mr. Kerry Cameron, Roberts County State's Attorney, received a call from a Mr. John Thomas requesting that a meeting be held with the state's attorney, the sheriff, and other law enforcement officials. As it developed, the purpose of the meeting was to consider complaints voiced by members of the local Indian population in and around Sisseton following the arrest of six male Indians on charges resulting from an incident that had occurred at a local bowling alley on October 16, 1976. Each of the six had been charged with six counts of attempted murder and one count of riot while armed. Bond had been set in the amount of $10,000 for each of the six defendants.

As a result of the telephone conversation, a meeting was set for 1:30 that afternoon at the city hall. Mr. Cameron and the local law enforcement officials arrived at the meeting room between 1:15 and 1:30. At about 1:45 they heard the sound of a drum and observed a group of from between 40 to 60 Indian people, about half of whom were children, coming down the street carrying a banner that bore the words "American Indian Movement." Some 18 to 20 members of the group came into the meeting room and the rest stayed on the sidewalk in front of the city hall building beating the drum and singing some songs. Among the persons who came into the meeting room were John Thomas, Greg Zephier, Bill Means, and defendant. They made it clear to everyone in the room that they represented the American Indian Movement. A discussion then followed between these individuals and Mr. Cameron. In Mr. Cameron's words, " * * it was a very orderly meeting and some demands were made by—mainly by Russell and Bill Means." These demands included a request that the bond be reduced for the six individuals who had been charged in connection with the incident at the bowling alley. The group also requested a more complete investigation of telephone threats that had been made that the Roberts County jail, where six men were being held, would

be bombed. A request was also made that an investigation be made to insure that the families of the six jailed individuals would not be in jeopardy or be threatened in any way. Finally, the group requested that a community forum be set up so that some of the townspeople, presumably members of the local Indian population, could air their dissatisfactions with the way in which law enforcement was being handled in Roberts County.

At one point during the discussion Bill Means alluded to the fact that an individual by the name of Bursheim was supposed to be coming to Sisseton to run Bill Means and his companions out of town, but that, in Bill Means' words,

"I want to make it clear that the reason we are leaving is we are going to survival school in Minneapolis and we are supposed to be down there today. And we aren't being run out of town. AIM isn't run out by anybody, out of any town."

Nearly all of the meeting, which lasted approximately an hour and a half, was taken up by a dialogue between Mr. Cameron and defendant, whom Mr. Cameron took to be the chairman or leader of the group. Defendant made numerous references to the American Indian Movement during the course of the meeting.

Mr. Cameron testified that there was no discussion of the fund raising activities of the American Indian Movement and no discussion about the International Treaty Organization. He also testified that defendant was under no charges during the time that he was in Sisseton on November 1, 1976, and that the meeting did not involve in any manner a court proceeding.

On cross-examination, Mr. Cameron acknowledged that the meeting with defendant and his colleagues was peaceful and that he had observed no violations of the law on the part of the individuals who had met with him. He volunteered the statement that "I thought it (the meeting) was rather useful, in fact." Mr. Cameron acknowledged that it had been made clear to him early in the meeting that the presence of defendant and the other Indian people

was entirely peaceful and that nothing had occurred during the course of the meeting to indicate that any of the objectives announced by them were other than peaceful.

Defendant testified that he and John Thomas had arrived in Sioux Falls on the night of October 30, 1976, from a lecture trip in the state of Washington, and that he had intended to join a caravan of teachers and students from an Indian survival school that was enroute to Minneapolis—St. Paul for a conference. On October 31st, defendant met with members of the caravan and went with them to the state penitentiary to meet with the Indian inmates there and with penitentiary officials. On the afternoon of October 31st, defendant traveled to Sisseton with his brother Bill, John Thomas and other individuals who were accompanying the survival school caravan. Although defendant testified that he had no idea at the time he went to Sisseton that he would be meeting with local law enforcement officials, a court service officer testified on rebuttal that defendant had called his office from Seattle, Washington, on October 28, 1976, with information about defendant's proposed itinerary for the following days. After speaking with defendant, the court service worker prepared a typed report setting forth the substance of the conversation. The report stated in part that on October 31, 1976, defendant would be in Sioux Falls for a demonstration at the state penitentiary and that on November 1, 1976, defendant would be in Sisseton, South Dakota " * * * to participate in a demonstration for a cause of Improper Incarceration in (sic) Indians."

Although defendant attempted to establish that his meeting with the law enforcement officials in Sisseton was not held in connection with the American Indian Movement, we conclude that the record supports the referee's finding that the demonstration and the meeting in Sisseton on November 1, 1976, were activities of the American Indian Movement not within the courts and were not connected with the International Indian Treaty Organization.

■ Our decision on whether to revoke defendant's bail on appeal is governed by SDCL 23-51-14, which provides in part that:

"When a defendant has been admitted to bail on appeal from a judgment of conviction, he may be remanded to custody as follows:

\*   \*   \*   \*   \*   \*

(2) When, on application by the state to the Supreme Court, the court is satisfied that the defendant should not be at large pending determination of the appeal, such application to be made on such notice to the defendant as the court directs."

We turn first to the question whether defendant's plea of guilty to the misdemeanor charge in Morton County, North Dakota, is sufficient reason to revoke his bail on appeal. The referee concluded that because the crime of assault was included within the crime of aggravated assault under the rule set forth in *State v. Parks*, 84 S.D. 510, 149 N.W. 161, the misdemeanor charge of assault was pending against defendant on January 6, 1976, and that therefore defendant's conviction following his guilty plea on that charge constituted a violation of condition 8 in the order admitting defendant to bail.

The referee was fully justified under the evidence in finding that a violation of condition 8 had occurred. However, in view of the plea bargaining involved and the lenient sentence that resulted, we would be loath to revoke defendant's bail on this finding alone, at least without a further hearing as to the actual facts of the North Dakota case and the reasons for the plea bargain.

Accordingly, we turn to defendant's violation of condition 4 of the bail order which we consider to be the most important grounds for the application for revocation of bail. Again, the finding of the referee that there had been a violation of condition 4 is fully justified by the record.

Defendant contends, however, that the prohibition against his participation in activities of the American Indian Movement constitutes an unconstitutional infringement of his First Amendment rights of free speech and free association, relying principally upon the case of *Sobell v. Reed*, D.C. N.Y., 327 F.Supp. 1294.

We think that the proper rule was expressed by the Court of Appeals for the Second Circuit in the case of *Birzon v. King*, 469 F.2d 1241:

"Alternatively, appellant argues that condition no. 11 violates Satz's first amendment freedom of association. We regard this argument as frivolous. It has been properly held that the Government can infringe the first amendment rights of prisoners so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment. See *Sobell v. Reed*, 327 F.Supp. 1294, 1303 (S.D.N.Y.1971), and cases there cited. On that basis, no one has questioned the Government's power totally to deprive a convicted person of his freedom of association. By the same token, when a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee. Although a parolee should enjoy greater freedom in many respects than a prisoner, we see no reason why the Government may not impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release. The restriction here involved is reasonably and necessarily related to the Government's legitimate interests in the parolee's activities and thus does not violate the first amendment." 469 F.2d at 1243.

In a case that involved a condition of probation that prohibited the defendant from making public statements designed to urge or encourage others to violate the tax law, the Court of Appeals for the Tenth Circuit stated:

"We infer also from the record presented that the court was seeking to prohibit extensive campaigning on the part of the defendant against the laws in question, and we do not agree that such a condition is invalid, for the defendant cannot be allowed to continue all of his old ways while on release from custody on probation; to allow him to do so undermines the probation system itself and makes a mockery of the law. It is also clear that the court has the power to restrict the probationer's association with groups that would palpably encourage him to repeat his criminal conduct." (citations omitted) *Porth v. Templar,* 10 Cir., 453 F.2d 330, 334.

■ As the Court of Appeals for the Eighth Circuit has noted, "Parole is an act of grace and reasonable conditions may be imposed in connection therewith." *Forester v. California Adult Authority,* 8 Cir., 510 F.2d 58, 61.

In *Malone v. United States,* 9 Cir., 502 F.2d 554, the defendant challenged the conditions of probation that prohibited him from participating in any American-Irish Republican Movement, from belonging to any Irish organization, cultural or otherwise, from belonging to or participating in any Irish-Catholic organizations or groups, from visiting any Irish pubs, and from accepting any employment that directly or indirectly would associate him with any Irish organization or movement. In concluding that these conditions of probation were not too vague and were reasonably related to the goals of probation and the accomplishments of public order and safety and that they did not constitute an abuse of the trial court's discretion, the court cited *Birzon v. King* and *Porth v. Templar,* supra, in stating that,

"The courts strive to protect freedom of speech, religion and racial equality, but freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state and public order." (citation omitted) 502 F.2d at 556.

In upholding the discretion of a sentencing court to impose restitution as a condition of probation, the California Supreme Court recognized that,

"The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. (Pen. Code, § 1203 et seq.) A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' (*People v. Dominguez* (1967) 256 Cal.App.2d 623, 627, 64 Cal.Rptr. 290, 293.) Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (footnote omitted) *People v. Lent,* 15 Cal.3d 481, 124 Cal.Rptr. 905, 908, 541 P.2d 545, 548.

■ It is true, of course, that these cases concerned conditions imposed upon those on probation or parole, whereas defendant is free on bond pending appeal. For the purpose of considering defendant's challenge to the validity of condition 4 of the bail order, however, we do not believe that the distinction between his status and that of one on parole or probation is significant enough to warrant any distinction in considering the validity of the conditions of the bail order. Having been convicted, defendant is no longer clothed with the presumption of innocence. The burden is upon him to demonstrate that his conviction should be set aside. Bail on appeal from a judgment imposing a penitentiary sentence is not a matter of right but is to be granted only when the ends of justice demand that the defendant be admitted to bail. SDCL 23–51–13. So long as the court to which an application for bail is presented affords the applicant appropriate due process in considering the merits of the application, the court retains broad discretion in considering

the factors that militate in favor of and against granting bail in any given case. *United States ex rel. Bad Heart Bull v. Parkinson,* D.C.S.D., 385 F.Supp. 1265. See also *State v. Olson,* 82 S.D. 605, 152 N.W.2d 176.

■ The circumstances under which the trial court imposed condition 4 must be considered when weighing the reasonableness of that condition. The trial court had just found defendant guilty of a serious felony charge following a lengthy trial during which defendant's participation in the disturbance that occurred at the Minnehaha County Courthouse on April 30, 1974, must have been fully developed by the evidence. Moreover, the trial court would have had to be in complete isolation not to have known that defendant was present at the Custer County Courthouse when the disturbance occurred there in February of 1973. Additionally, the trial court must have been aware of the charges that were pending against defendant in North Dakota on the date that the order admitting defendant to bail was entered. Whether fortuitous or planned, defendant had been directly involved in a number of violent incidents in connection with the activities of the American Indian Movement. To what extent defendant was responsible for any of these incidents we have not yet determined, because his appeal from the conviction in the instant case has not yet been submitted to us. We do know, however, from the transcript and exhibits contained in the settled record in the appeal that is presently before us in the *Bad Heart Bull* and *High Eagle* case alluded to above (Nos. 11531 and 11573), that defendant was present in the Custer County Courthouse immediately prior to the disturbance that occurred there. Moreover, it is a matter of record that defendant stood trial on charges arising out of the Wounded Knee occupation. See *United States v. Banks,* D.C.S.D., 383 F.Supp. 368; 383 F.Supp. 389; *United States v. Means,* 8 Cir., 513 F.2d 1329. We say this not to prejudge defendant's guilt or innocence in the instant case, but to recognize that the trial court had a rational basis upon which to impose as a condition of bond on appeal a prohibition against defendant's participation in any American Indian Movement activities except fund raising and activities within the courts. Thus we find no infringement of defendant's rights to freedom of association, speech and travel under condition 4.

■ SDCL 23–51–14 expressly empowers this court to remand defendant to custody pending determination of his appeal. We do so for the following reasons:

(1) Defendant violated a reasonable restriction lawfully imposed upon him as a condition of his release on bail,

(2) His violation was not through inadvertence or mistake. Instead, he planned in advance to participate and voluntarily assumed a prominent role during the Sisseton activity, and

(3) The prohibited activity on several former occasions at other places in this state led to violent confrontations between American Indian Movement members and law enforcement personnel. Defendant's conviction, here on appeal, arose out of one such occasion. Defendant could not know in advance whether the Sisseton activity involved here would end peaceably, or in a breach of the peace. His deliberate participation must be viewed as a willingness on his part to assume that risk. Although fortuitous, the fact that no violence occurred should not be accepted as an after-the-fact justification for defendant's prior intentional breach of the bail order.

We need not speculate here as to whether we would have found an abuse of discretion in admitting defendant to bail. Defendant has no absolute right to bail pending appeal under SDCL 23–51–13. Most likely, the action of the trial judge in either granting or denying bail under these circumstances would have been upheld.

■ We are now, however, a significant step beyond the question of the initial grant of bail after conviction. Today we must consider whether defendant should continue

free on bail even though he violated a bail condition we may reasonably see as having been crucial to his release, directly related as it was to the nature of the activity out of which came his conviction below of the felony of "rioting to obstruct." An appellant who, while free on bail pending appeal from a judgment imposing a penitentiary sentence for a crime of violence, knowingly violates a material condition of the bail has by his own act taken upon himself a difficult burden of persuasion in a proceeding under SDCL 28–51–14. Because defendant here is an intelligent, mature adult, his deliberate violation weighs against a conclusion that the breach should be seen as insubstantial and as unlikely to be repeated.

Accordingly, we hold that defendant's application for an amendment of the order admitting him to bail is denied, and we further hold that the state's motion for revocation of bail be granted and an order entered revoking defendant's bail and remanding him to custody.

PORTER, J., and HOYT *, Circuit Judge, concur.

WOLLMAN and MORGAN, JJ., concur in part and dissent in part.

WOLLMAN, Justice (concurring in part, dissenting in part).

Although I join in that portion of the majority opinion that holds that condition number 4 of the bail order is not an unconstitutional infringement of defendant's constitutional rights and that defendant's violation of condition number 8 would not of itself justify revoking defendant's bail, I would not revoke defendant's bail for his violation of condition number 4, given the circumstances of this case.

Assuming for the purpose of this proceeding that the trial court intended to prohibit defendant from participating in peaceful activities of the American Indian Movement out of a well-founded concern for the public safety that defendant's mere presence at and participation in such activities might provoke violent responses, either from members of the organization or from those who might be opposed to such activities, did defendant by participating in the Sisseton meeting forfeit his right to remain on bail pending determination of his appeal? As the referee pointed out in his report, that is a question that must be answered by this Court, and a question on which the referee expressed no opinion and made no recommendation.

With due consideration for all of the factors that a court must weigh in determining whether a defendant who has been released on bond pending appeal should be remanded to custody, I would hold that defendant's participation in the meeting at Sisseton on November 1, 1976, does not mandate that his bond be revoked. My decision is based upon the fact that the meeting was orderly, peaceful, and—in the opinion of the one person who was in the best position to evaluate the total situation, the Roberts County State's Attorney—useful. True, there was the march to the city hall, accompanied by the beating of a drum. This no doubt gave rise to heightened tensions in a community already tense as a result of the apparently violent incident at the bowling alley that led to the arrest and incarceration of six Indians. Although the march might have led to the type of violent confrontation that marked the incidents at the Custer County Courthouse in February of 1973 and at the Minnehaha County Courthouse in April of 1974, the fact remains that no such violent confrontation occurred.

If I were convinced that defendant's participation in the events in Sisseton was the result of a studied, deliberate plan to flout the trial court's order for purposes unrelated to the achieving of any peaceful, ameliorative goals, then I would wholeheartedly join in the opinion to revoke defendant's bond, for if we were faced with a deliberate, contemptuous violation of an eminently reasonable condition of bail by one who has been shown every consideration the law affords, we would of necessity vindicate the trial court's order by revoking bail. It may

---

* HOYT, Circuit Judge, sitting for ZASTROW, J., disqualified.

be that defendant's conduct was motivated by an attitude of cynical defiance. Perhaps our remand for findings should have included a request that the referee make a recommendation whether or not bail should be revoked, for such a recommendation would have been highly persuasive to me, based as it would have been upon the referee's opportunity to judge defendant's demeanor and attitude. As it is, we have only the cold record before us, a record that fully supports the referee's finding that defendant's participation in the events at Sisseton constituted a violation of condition number 4 of the bail order, but a record that leaves me with the impression that the violation, although deliberate, was one that occurred in the course of a good faith attempt to avert what might otherwise have resulted in a violent confrontation.

We have witnessed a turbulent period in our state's history during the past four years. At least two of our courthouses have been damaged through violence. Tensions between Indian and non-Indian citizens have run extremely high at times. Hopefully, the days of violence are past, never to be repeated. This period has been a difficult one for our law enforcement agencies and our judicial system, for our legal system is premised upon the assumption that the resolution of social grievances and disputes and criminal charges will be determined in an atmosphere of studied deliberation and calm. If we have learned anything from this period of strife and tension, it is that our system of government can exist successfully only in an environment of peace and in a spirit of mutual understanding and rational discussion.

It is because I place such a high premium upon peace and nonviolence that I would hold that defendant's participation in the events at Sisseton on the day in question does not warrant the revocation of his bond. To hold otherwise would be to vindicate the provisions of the trial court's order at the price of penalizing interests of our society which are far more important than the matter of defendant's incarceration for participating in a peaceful, useful discussion with law enforcement officers concerning what defendant and his colleagues apparently perceived to be legitimate grievances with local conditions in Sisseton.

It would not necessarily follow from a decision not to order defendant remanded to custody that condition number 4 of the bail order need be stricken as an unconstitutional infringement upon defendant's freedom of association, speech and travel. As indicated in the majority opinion, it is clear that defendant has been involved in at least three incidents in which members of the American Indian Movement have been involved in violence. Defendant was charged with and convicted of a crime of violence in North Dakota, albeit a relatively minor charge as it ultimately developed. Moreover, it is apparent from the briefs and from defendant's testimony at the revocation hearing that, rightly or not, defendant's name is synonymous with that of the American Indian Movement and that wherever he goes defendant is immediately recognized as the leader of that organization. In addition, we would be blinking at reality if we did not acknowledge the fact that it is a matter of common knowledge that defendant has been the subject of widespread publicity concerning his involvement with the American Indian Movement and its causes. The trial court was no doubt understandably and justifiably concerned with the potential violence that defendant's mere presence at the scene of any American Indian Movement activity might precipitate. Given the history of defendant's involvement with activities that later resulted in violence, the trial court was well within its discretion in imposing condition number 4 in the order admitting defendant to bail, and I agree that that condition need not be stricken from the order. If defendant was being truthful and sincere in his testimony at the hearing that he had faithfully tried to comply with the terms of that condition by informing his audiences during his travels that he was not appearing as a representative of the American Indian Movement, then surely he would not find it unduly onerous to continue to refrain from participating in American Indian Movement

activities during the continued pendency of his appeal.

Although some might interpret a decision not to revoke defendant's bail as condoning violations of the conditions of bail orders, such is not the intent, nor do I think would be the effect, of such a decision, for the statute itself contemplates that it is not every violation of the terms and conditions of bail that will result in an order of remand to custody. If SDCL 23–51–14(2) requires the exercise of judicial discretion in determining whether bail should be revoked, and I believe that the statute admits of no other interpretation, then to revoke defendant's bail in the instant case would be to apply the statute in a mechanistic fashion, one that would be contradictory to the values of peaceful, nonviolent assembly held to accomplish the orderly redress of grievances. I pass no judgment on defendant's overall role as a leader of the American Indian Movement. It will remain for the sweep of history to determine whether defendant was a charismatic, unselfish leader who courageously sought to redress what he perceived to be the wrongs suffered by his people, or whether he was merely a cynical opportunist—a peripatetic gadfly who flitted about the state, the nation and the world at others' expense, leaving his brothers behind to reap the whirlwinds sown by his actions. Whatever the ultimate judgment of time, in this one instance I would hold that defendant's role in the events of the day does not warrant the revocation of his bond.

MORGAN, Justice (concurring in part, dissenting in part).

I concur in that portion of the majority opinion that holds that the defendant's violation of condition number 8 would not justify revoking defendant's bail. However, I respectfully dissent from the balance of the opinion. I join Justice Wollman in the result of his dissent for all the reasons given for not revoking the bail of the defendant. His appeal to reason premised on the peaceful, useful discussion at the Sisseton meeting appeals to me far more than any side

remarks of Bill Means, quoted in the majority opinion, which were not joined in by or otherwise attributable to the defendant.

The order admitting defendant to bail set out nine various conditions summarized as follows:

(1) Fixed bail at the sum of $2,000.00;

(2) Required that the defendant obey all laws of the United States and any of its member states or their subdivisions;

(3) The defendant waive extradition;

(4) That the defendant will refrain from participating in any American Indian Movement activities except fund raising, International Indian Treaty Organization, and activities within the courts;

(5) That he report by telephone or in person to a court service worker at least every fifteen days detailing his plans for the ensuing fifteen days and such other details as the court service worker shall require;

(6) That at least every sixty days he personally present himself at Sioux Falls to the court service worker to make that report and to make himself available to such questioning as the court service department wishes to make of him;

(7) Bail is subject to revocation if he is held after either preliminary hearing or grand jury indictment to answer any criminal charge arising out of any occurrence after release on bail;

(8) Bail is subject to revocation if he is convicted on any criminal charge pending against him at the time of release; and

(9) That he will refrain from consumption of alcoholic beverages.

With respect to the first instance of violation which arose when the defendant "copped a plea" to an insignificant misdemeanor charge and thereby secured dismissal of a major felony charge in North Dakota, I agree completely with Justice Wollman's disposition of that supposed violation.

The second violation is obviously more serious and requires some consideration of the background under which the condition was imposed and the change in the situation, if any, which has occurred since that

time. Here again, I agree with Justice Wollman as to the result attained in his reasoned appeal for judicial restraint in this instance. However, I would go one step further for I cannot agree that condition number 4 is constitutionally valid.

Bail pending appeal is not a matter of unqualified constitutional right. However, where a right is created by the state legislature it may not be arbitrarily or discriminatorily denied without running afoul of the Fourteenth Amendment of the U. S. Constitution.[1] We have two statutes pertinent to the question. The first, SDCL 23–26–4 makes the right of bail in cases such as this "as a matter of discretion" and SDCL 23–51–13 provides that in similar cases to this "only when, in the opinion of the trial court or any judge of the Supreme Court to whom application is made, the ends of justice demand that the defendant be admitted to bail." Construing these statutory provisions in 1967, Justice Biegelmeier, in setting bail in the matter of *State v. Olson,* 82 S.D. 60, 152 N.W.2d 176, outlined the factors to be considered in passing upon the question of admission to bail, and found them to be essentially two: assurance of the defendant's future presence in court and the protection of society.

At this point I must take issue with the majority opinion and with Justice Wollman on the adoption of the probation and parole decisions as authority on bond pending appeal. Black letter law points out that the conditions of probation and parole are premised on the purpose of rehabilitation of the parolee or probationer whereas conditions of bond on appeal are primarily to secure attendance when required and for the protection of the public as Justice Biegelmeier so clearly enunciated.

The American Indian Movement (AIM) is a political movement among the Indian people. I do not pretend to know its philosophy nor do I by this opinion indicate any approval as to either its ends or the means used in the past to attain those ends. However, it is not an illegal or unlawful organization, clearly distinguishing this case from *Malone v. United States,* 9th Cir., 502 F.2d 554, wherein the defendant parolee was proscribed from activities in the Irish Republican Army. As the majority opinion gratuitously points out AIM attained its prominence in the 71-day occupation of Wounded Knee, in the Custer Courthouse incident, and subsequently in the Minnehaha County Courthouse incident. It is out of the latter incident that defendant's conviction now in the process of appeal to this Court arose. I do not pass judgment on any of these incidents for none of them are before us at this time.

However, I do note that since the Minnehaha County incident on April 30, 1974 no violent confrontations have occurred and it is apparent to me that the leaders of the movement have decided that it is to their advantage to work within the system. The success of their change in tactics is apparent for our judicial system has provided them with fair trials resulting in numerous acquittals, including the defendants at the Wounded Knee trial.

The majority feel that it was merely fortuitous that no violence occurred at Sisseton and in fact the meeting produced some good effects. I prefer to believe that this is another example of the effect of responsible leadership attempting to work within the system.

It is only in a most unusual case that bail may be conditioned upon a curtailment of First Amendment freedoms and then only where shown to be absolutely necessary to assure the defendant's presence or society's protection. See *Christoffel v. United States,* 89 U.S.App.D.C. 341, 196 F.2d 560 (1951) and also *Williamson v. United States,* 184 F.2d 280 (2 Cir. 1950) where the defendants had been convicted of advocating the violent overthrow of the United States Government as members of the Communist Party. In *Williamson,* Justice Jackson writing as a circuit justice from the second circuit stated: "Courts should not utilize their discretionary powers to coerce men to forego conduct as to which the Bill of Rights leaves them free."

1. *U. S. ex rel. Bad Heart Bull v. Parkinson, et al.,* 381 F.Supp. 985.

Justice Wollman drew an excellent picture of the inter-relationship between the defendant and AIM. Defendant has received widespread publicity concerning his involvement with the AIM activities. Indeed his name is practically synonymous with AIM. When he opens his mouth to speak the audience hears the voice of AIM. If that be the case, and it was as equally apparent when the condition was imposed as it is now, if participation in AIM activities was as fraught with peril as the majority assumes why the exceptions 1 and 2, fund raising and International Indian Treaty Organization activities. If the defendant had worn a badge for the International Indian Treaty Organization or passed a hat for AIM funds would it have made any significant difference at the Sisseton meeting. There are at least two conditions that far more effectively constrain the defendant from participation in violence to protect the public; namely, number 2, the adjuration to obey all laws of the United States and any of its member states or their subdivisions, and number 7, which provides for revocation of bail at any time that defendant is bound over on preliminary hearing or held to answer on grand jury indictments for any offenses committed after bail is granted. There is no suggestion that the defendant has not fully complied with the rather onerous conditions requiring reports at intervals of fifteen days and personal appearance at Sioux Falls at least every sixty days. He has waived extradition so that the factor of availability for attendance is amply protected. There is simply no necessity for the infringement on defendant's First Amendment rights. I would hold that the imposition of condition number 4 was in violation of the defendant's First Amendment rights to be a participant in all legal activities of a legal organization as being totally unnecessary for either securing defendant's presence or for protection of the public.