**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Elmer John CUMMINGS, Defendant and Appellant.**

**No. 12044.**

Supreme Court of South Dakota.

Jan. 25, 1978.

---

John P. Guhin, Asst. Atty. Gen., Pierre, on the brief, William J. Janklow, Atty. Gen., Pierre, for plaintiff and respondent.

David V. Vrooman, Sioux Falls, for defendant and appellant.

WOLLMAN, Justice.

Defendant has appealed from his conviction on a charge of possession of slot machines. SDCL 22–25–13. We affirm.

In the early morning hours of February 26, 1975, defendant's eastbound rental truck was stopped by a state trooper on Interstate 90 near Mitchell and defendant was cited for failing to display headlights. Defendant informed the officer that he had had generator problems but refused to grant the officer permission to examine the generator. In response to the officer's inquiry concerning the nature of the load that defendant was hauling in the truck, defendant stated that he was hauling antique fur-

niture. Defendant refused the officer's request for permission to inspect the load and informed him that he had no bill of lading. The officer then called his supervisor. Upon the latter's arrival, the investigating officer informed defendant of his *Miranda* rights and questioned him further regarding the cargo in the truck. Defendant again told the officer that he was hauling antique furniture and gave as a reason for not wanting the officer to look in the truck the fact that he was hauling one antique slot machine, a picture of which he showed to the officer. The officer then took the truck to the Mitchell Police Department, where it was searched later that morning pursuant to a search warrant. The truck was found to contain, among other things, several slot machines, two of which were introduced as exhibits at defendant's trial.

At trial, defendant called as a witness the owner and developer of a tourist attraction near Sioux Falls. This individual, who in addition to his other civic activities was an incumbent state senator from Minnehaha County, testified that as a part of the planned development of a replica of an 1880 territorial town at his tourist attraction he planned to install some antique slot machines similar to the machines that he had seen in other tourist attractions around the state. Because of his position in public office and as the national vice-president of a medical research charitable organization, the witness was concerned that he not become involved in the ownership of any equipment that might lead to embarrassing publicity. Accordingly, sometime during the spring of 1974 he spoke with an assistant attorney general in the State Department of Revenue, who advised him to contact an appropriate official in the Internal Revenue Service. In response to his request, the witness received a letter from the Acting District Director of the Internal Revenue Service on May 8, 1974, advising him that because none of the machines that the witness contemplated owning would be offered for play to the public, there would be no federal tax liability. The letter also pointed out that federal law prohibits only the interstate transportation of gambling equipment, and that the Internal Revenue Service has no jurisdiction to enforce laws relating to gambling operations.

In addition, the witness received a letter on May 28, 1974, from the assistant attorney general he had earlier spoken with. This letter stated that it was the writer's opinion that if the slot machines the witness intended to possess were not in fact operated but were merely on display for the public there would be no violation of state law. The letter very carefully stated that the views expressed therein were those of the writer and were not in any way to be considered the opinion of the Attorney General.

The witness also received a letter from the Minnehaha County State's Attorney which stated that the possession and use of slot machines is unlawful under state law and that the mere possession of such machines is declared to be a public nuisance. Accordingly, the letter suggested that the machines to be acquired be altered in a way that would make it impossible that they ever be used for gambling.

The witness showed these letters to defendant and asked him to obtain some slot machines that would be suitable for the purposes for which the witness wished to use them at the tourist attraction. The witness was not certain, however, exactly when it was that he had this conversation with defendant and could not relate it to a time that approximated the date of the offense. He acknowledged on cross-examination that he did not know whether defendant was in fact obtaining anything for him on the day defendant was arrested. Defendant did not testify.

Defendant's first contention is that no crime was committed because South Dakota law prohibits only the use of slot machines. SDCL 22–25–13 provides:

"It shall be unlawful for any person to have in his possession, custody, or under his control or to permit to be kept in any place under his possession or control, any slot machine or device upon the action of which anything of value is staked and

which is operated by placing therein or thereon any coins, checks, slugs, balls, chips, tokens, or other articles, or in any other manner as a result of such operation anything of value is won or lost by the operation of such machine, when the result of such operation is dependent upon chance. But the provisions of this section shall not extend to coin-operated nonpayout pin tables and arcade amusements, with free play features. Whoever shall violate any of the provisions of this section shall be guilty of a misdemeanor."

Defendant cites *Chapman v. Aggeler*, 47 Cal.App.2d 848, 119 P.2d 204, in which the California District Court of Appeal interpreted a statute substantially similar to SDCL 22–25–13 as prohibiting only the possession of a slot machine which is operated or played and not one which may be operated or played. We are not persuaded by the logic of the California decision, however. We note that the court followed a rule of strict construction, saying,

"When legislators speak through statutes, their enactments must be given a strict interpretation. The law must be applied as it is written. It cannot be extended by judicial interpretation." 119 P.2d at 207.

Such an approach to statutory construction is at odds with SDCL 22–1–1, which provides:

"The rule of the common law that penal statutes are to be strictly construed has no application to this title. All its provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice."

Read in the mechanistic manner followed by the California court, SDCL 22–25–13 is susceptible of the interpretation urged by defendant, but only at the cost of disregarding the adjuration of SDCL 22–1–1 that the statute be construed according to the fair import of its terms and with a view to effect its objects. SDCL 22–25–13 should not be read in isolation, but rather should be construed in the light of the other provisions of Chapter 22–25, including SDCL 22–25–14, which provides:

"All slot machines capable of being used for gambling and places where they are kept or operated together with all property of any kind kept or used in connection with operation of the same, are hereby declared to be public nuisances."

■ We should not presume that the legislature intended to make the possession of an operable slot machine a nuisance and at the same time intended that the possession of such a machine should not be unlawful. We conclude, therefore, that that language in SDCL 22–25–13 that speaks of a machine "upon the action of which anything of value is staked and which is operated by placing therein or thereon any coins . . . or in any other manner as a result of such operation anything of value is won or lost . . . ." is language of description and not language that limits the prohibition against the devices described therein to those that are being or have been used for gambling. See *Bobel v. People*, 173 Ill. 19, 50 N.E. 322; Annot. 162 A.L.R. 1188, 1191.*

■ Defendant's next contention is that the trial court erred in refusing to give his proposed instruction that:

"An act committed by a person who is aware of the existence of the criminal law relating to the subject of his conduct who erroneously concludes in good faith that his particular conduct is for some reason not subject to the operation of any criminal law is not guilty of a crime. Where it appears that before engaging in the conduct, the defendant made a bona fide, diligent effort, adopting a course and resorting to sources and means at least as appropriate as any afforded under our legal system, to ascertain and abide by the law, and where he acted in good faith reliance upon the results of such efforts which disprove any criminal intent he has not committed a criminal offense."

---

\* We note that our law now apparently provides for the lawful possession of antique slot machines that are not being used for gambling purposes. SDCL 22–25–14.1 (Ch. 191, Laws of 1977).

We need not pause to examine the merits of this contention, for the evidence did not support the giving of the instruction. The only testimony regarding the three letters received from the several public officials was that of the owner of the tourist attraction. At best, his testimony established only that he had shown the letters to defendant sometime before the date of the offense—exactly when, he could not recall. Defendant did not testify, and there was no evidence submitted at trial to establish the fact that he had relied upon those letters or that the machines in question had been obtained by him for the owner of the tourist attraction at the latter's request. The trial court, therefore, did not err in refusing to give the requested instruction, for courts are not required to instruct on matters that find no support in the evidence. *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232; *State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246; *State v. Zemina*, 87 S.D. 291, 206 N.W.2d 819.

■ Defendant attacks the validity of the search of his vehicle, contending, among other things, that the search was illegal because the affidavit upon which the magistrate directed that the search warrant might be served at night was not positive that the property was in the place to be searched, as required by SDCL 23–15–16, which provides in part that:

"The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits be positive that the property is on the person or in the place to be searched in which case he may insert a direction that it be served at any time of the day or night; . . . "

Although the affidavit does not in so many words state that the affiant was "positive" that the property was in the place to be searched, that affidavit does recite that:

· "The driver [defendant] finally stated that he had one antique slot machine and other antiques. . . . [He] also exhibited to the affiant and to the Deputy States Attorney . . . a picture of an antique slot machine which he claimed was part of his cargo."

We conclude that these statements constituted a sufficiently positive assertion to satisfy the requirements of SDCL 23–15–16.

Defendant's other attacks on the validity of the search are without merit.

We have considered defendant's contentions that the trial court erred in allowing the state to endorse the name of a witness after the jury had been sworn to try the case and that the state did not establish a proper chain of evidence, and we conclude that they are without merit.

■ Finally, defendant contends that the trial court erred in imposing as a condition of suspending execution of the 90-day jail sentence imposed upon defendant the provision:

. . . . .

"(3) that the Defendant waives his right to be free from search and seizure for a period of one year during which time any police officer or other law enforcement officer may, with prior written or oral consent of the Defendants Probation Officer, search the Defendant and his premises anytime of the day or night for gambling machines."

Under the provisions of SDCL 23–57–5, the trial court was empowered to impose conditions upon the suspension of the execution of defendant's sentence. That statute provides in part that:

"All courts having jurisdiction to try offenses under the laws of this state, and the judges thereof, shall have power to suspend the execution of sentence during good behavior, and subject to such conditions or restitutions as the court or judge thereof may impose, upon conviction of any misdemeanor under the laws of this state . . . ."

Defendant acknowledged at the sentencing hearing that he was a dealer in coin operated machines and that he had purchased slot machines in the past. Given this knowledge, the trial court acted reasonably in imposing the condition in question upon defendant. We do not intimate that conditions of probation similar to the one in

question be imposed as a matter of routine, but rather that they be imposed in selected cases in the exercise of sound judicial discretion and with the purpose of achieving the goal of rehabilitation, the accomplishment of which will serve to protect the public during the period of probation, as well as thereafter. Although the need for the imposition of such a condition in a case such as the instant one may not be so compelling as in cases involving, say, narcotics violations, nevertheless we cannot say, given defendant's self-confessed status as a dealer in slot machines, that the trial court abused its discretion in imposing the condition in question. Cf. *State v. Marshall*, S.D., 247 N.W.2d 484; SDCL 23–57–5.1 (Ch. 196, Laws of 1977).

 Likewise, we conclude that the condition in question does not violate any of defendant's constitutional rights. A probationer's expectations of privacy are less than those of the average citizen, and a condition of probation such as that imposed in the instant case does not run afoul of defendant's Fourth Amendment rights. See, e. g., *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329; *People v. Mason*, 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630; *People v. Richards*, 76 Mich.App. 695, 256 N.W.2d 793; *Himmage v. State*, 88 Nev. 296, 496 P.2d 763; *State v. Schlosser*, N.D., 202 N.W.2d 136. See also *State v. Means*, S.D., 257 N.W.2d 595.

We note that the trial court's sentence does not give the law enforcement officers an untrammeled right to conduct warrantless searches, but rather imposes upon them the requirement that prior consent be obtained from defendant's probation officer. Although such a provision might not save an otherwise unconstitutional infringement of a person's Fourth Amendment rights, it does confirm the trial court's careful approach in fostering the rehabilitative and protective aspects of the conditions of probation.

The judgment of conviction is affirmed.

ZASTROW and MORGAN, JJ., concur.

DUNN, C. J., and PORTER, J., dissent.

DUNN, Chief Justice (dissenting).

I would dissent. I am in agreement with the interpretation made of SDCL 22–25–13 by the Assistant Attorney General and the Minnehaha County State's Attorney. The statute is a prohibition of *possession and use* of slot machines, and it does not apply to possession of an antique machine. In fact, SDCL 22–25–14.1 (which went into effect after this incident) declares it to be the policy of the legislature that all slot machines manufactured prior to 1941 be preserved as part of South Dakota's heritage. SDCL 22–25–14 (declaring all slot machines a nuisance), upon which the majority opinion leans heavily in interpretating SDCL 22–25–13, is still in effect. So we now have one statute calling the slot machines manufactured prior to 1941 a "public nuisance" and another preserving these antique machines as "part of South Dakota's heritage!"

I am authorized to state that Justice Porter joins in this dissent.