**UNITED STATES of America ex rel. Russell C. MEANS, Relator,**

v.

**Herman SOLEM, Warden of the South Dakota State Penitentiary, Sioux Falls, South Dakota, Respondent.**

Civ. 77–4100.

United States District Court, D. South Dakota, S. D.

Nov. 8, 1977.

Sidney B. Strange, Sioux Falls, S. D., and Kenneth E. Tilsen, St. Paul, Minn., appeared in behalf of the relator.

Gary J. Pashby, Special Deputy States Atty., of Sioux Falls, S. D., appeared in behalf of the respondent.

Stephen L. Pevar, American Civil Liberties Union, of Denver, Colo., appeared as amicus curiae.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Relator, Russell C. Means, seeks a writ of habeas corpus, pursuant to 28 U.S.C. 2254, contending that the decision of the South Dakota Supreme Court revoking his appeal bond has resulted in his imprisonment in violation of the United States Constitution.

This imprisonment is the result of the latest involvement of the relator with the courts of South Dakota. The involvements pertinent to this action began with a disturbance that occurred at the Minnehaha County Courthouse in Sioux Falls, South Dakota, on April 30, 1974. As a result of this disturbance, relator was charged by information with the crime of "rioting to obstruct." S.D.C.L. 22–10–4.

At the request of the relator, that charge was tried to the court, and on December 15, 1975, the South Dakota Circuit Court found Russell Means guilty of the crime charged. On December 31, 1975, the court entered a judgment of conviction and sentenced relator to a four year term in the state penitentiary. That conviction is currently on appeal to the South Dakota Supreme Court. On the day that the state trial court entered its decision, Means made a motion to

that court for an order admitting him to bail pending appeal.

On January 6, 1976, the trial court entered its order admitting defendant to bail provided he complied with certain conditions, which were:

1) That defendant deposit $2,000 cash bail;
2) That defendant obey all laws;
3) That defendant waive extradition;
4) That defendant will refrain from participating in any American Indian Movement activities except the following.
   (a) Fund raising,
   (b) The International Indian Treaty Organization,
   (c) Any activities of the American Indian Movement within the courts.
5) That defendant report to court services every 15 days in person or by telephone and detail his activities and where he would be during the ensuing 15 day period;
6) That defendant personally appear at court services every 60 days to report and for questioning;
7) That defendant have his bail revoked if he is "held after either preliminary hearing or grand jury indictment to answer any criminal charge arising out of any occurrence that transpires after he is released on bail from this charge pending appeal";
8) That the bail will be revoked if the defendant is convicted of any criminal charge presently pending against him;
9) and That defendant refrain from consumption of alcoholic beverages.

On January 5, 1977, the state filed an application for an order revoking bail, alleging that defendant had violated conditions 4 and 8 of the trial court order admitting him to bail. Pursuant to that application, the South Dakota Supreme Court, on January 26, 1977, remanded the case back to the trial court for purposes of conducting an evidentiary hearing. The trial judge, acting as a referee, conducted an evidentiary hearing and found that relator had violated provisions 4 and 8 of the conditions in the order admitting defendant to bail. He made no recommendations on whether bail should be revoked.

Relator applied to the South Dakota Supreme Court for an order amending the conditions of bail by striking conditions 4 and 8. On September 9, 1977, the state Supreme Court decided the matter:

(W)e hold that defendant's application for an amendment of the order admitting him to bail is denied, and we further hold that the state's motion for revocation of bail be granted and an order entered revoking defendant's bail and remanding him to custody. *State of South Dakota v. Means*, S.D., 257 N.W.2d 595, at p. 602, filed September 9, 1977.

In reaching that decision, the South Dakota Supreme Court found that a revocation of bail on the finding of the referee that relator had violated condition 8 of the order was not by itself justified but that the referee's finding of a violation of bail condition 4 supported, or rather demanded, a revocation of bail.

The referee's finding of a violation of condition 8 was based on the evidence that in November of 1976, Russell Means pled guilty to a misdemeanor assault charge in Morton County, North Dakota. That plea was the product of a plea bargain in which an original charge of aggravated assault and battery was reduced to the misdemeanor charge. On that conviction relator was sentenced to thirty days in jail, which was suspended, a $100 fine, and certain restitution. Because of the plea bargaining and the lenient sentence, the South Dakota Supreme Court considered this evidence of a guilty plea insufficient, alone, to justify bail revocation.

The finding that the court did consider sufficient to revoke bond, a violation of condition 4, arose out of an incident that occurred in Sisseton, South Dakota. There, in the fall of 1976, six male Indians had been charged with six counts of attempted murder and one count of riot while armed. This had caused a potentially explosive situ-

ation between the local Indian population and the white members of the community. In order to voice certain demands and thereby alleviate tensions, various Indian leaders had requested, and received a meeting with local law enforcement officials. The state court found that the Indians at the meeting made it clear that they represented the American Indian Movement. Russell Means was among those present at that meeting. He, along with his brother, Bill, led the presentation of demands. These demands included:

1) that the bond for the six defendants be reduced;

2) that a more complete investigation of telephone bomb threats to the jail housing the six defendants be conducted;

3) that an investigation be made to insure that the families of the six jailed individuals would not be in jeopardy or be threatened in any way; and

4) that a community forum be set up to enable members of the community an opportunity to air their dissatisfaction with the way in which local law enforcement was being handled.

The meeting was characterized by the state's attorney as "a very orderly meeting", and "rather useful, in fact." From this evidence the South Dakota Supreme Court revoked relator's bond. Two justices dissented and found that the meeting at Sisseton did not justify bail revocation. From this decision, the relator applied for a rehearing before the state supreme court. On September 30, 1977, the South Dakota Supreme Court denied the petition for rehearing and issued orders revoking the bond and directing the relator to report to the Minnehaha County Sheriff no later than October 14, 1977, at 5 p.m.

On October 7, 1977, the South Dakota Supreme Court denied relator's motion for stay pending the filing of a petition for writ of certiorari before the United States Supreme Court.

On October 11, 1977, an application for Stay of Order revoking bond or for bail was presented to the Honorable Justice Blackmun, Circuit Justice for the Eighth Circuit. On October 14, 1977, a temporary stay was issued. Then, on October 31, 1977, the United States Supreme Court denied relator's application. The Court tersely stated:

> The order heretofore entered on October 14, 1977, is vacated and the application for stay of the order of the Supreme Court of South Dakota, dated September 9, 1977, is denied. Mr. Justice Blackmun, joined by Mr. Justice Brennan, and Mr. Justice Marshall, being concerned about the First Amendment implications of the vacation of the stay, dissents and would continue the stay pending plenary consideration of the South Dakota Supreme Court's revocation of the applicant's bail.

As required, the relator reported for imprisonment at 6:00 p.m. on November 1, 1977. Prior to reporting, however, the relator sought a stay from this Court. In addition, relator filed an application for a writ of habeas corpus. This Court, in deference to the United States Supreme Court order of the previous day, denied the stay but granted oral argument on relator's application for writ of habeas corpus so that the petition could be promptly considered by this Court. Oral argument of counsel was heard on November 4, 1977.

■ As the procedural history reflects, there is little doubt that relator has exhausted his state remedies as required by 28 U.S.C. 2254(b). *McInnes v. Anderson*, 366 F.Supp. 983, 987 (E.D.Okl.1973). The issue then arises as to whether the state's revocation of an appeal bond presents an issue for review under 28 U.S.C. 2254. As the language of the statute clearly provides, there are essentially two initial requirements for a proper 2254 action. First, the petitioner or relator must be "a person in custody pursuant to the judgment of a State court." There is no dispute that Russell Means satisfies this requirement. Second, petitioner is required to demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). In other words, "petitioner must show an infirmity of constitutional

dimension in the state court proceedings." *United States ex rel. Cameron v. People of State of New York*, 383 F.Supp. 182, 183 (E.D.N.Y.1974). That represents the crux of the matter here.

■ As the court noted in *United States ex rel. Rainwater v. Morris*, 411 F.Supp. 1252 (N.D.Ill.1976), despite the Eighth Amendment of the United States Constitution, no court has held that there is an unqualified constitutional right to bail. See also *McInnes v. Anderson, supra* at 987. There the court stated: "It may be noted however that a state prisoner has no absolute Federal Constitutional right to bail pending appeal and generally denial of bail is not an available ground for seeking Federal habeas corpus relief. *Hamilton v. State of New Mexico*, 479 F.2d 343 (10th Cir. 1973)."

Although there is no constitutional right to bail, the denial of bail or its revocation may in certain situations present constitutional issues. This was recognized in *Abbott v. Laurie*, 422 F.Supp. 976, at 978 (D.R.I.1976):

> It is well established that, although postconviction bail for state defendants is not a federally protected right, once a state creates such a right it is bound by the due process clause to grant or deny its application fairly and reasonably. *United States ex rel. Walker v. Twomey*, 484 F.2d 874, 875 (7th Cir. 1973).

See also *United States ex rel. Abate v. Malcolm*, 397 F.Supp. 715, 717 (E.D.N.Y. 1975), vacated 522 F.2d 826 (2nd Cir. 1975), and *Maldonado v. Delgado*, 345 F.Supp. 993 (D.P.R.1975). But, cf. *Sheldon v. State of Nebraska*, 401 F.2d 342, 346 (8th Cir. 1968).

The South Dakota legislature has made provision for bail pending appeal:

> After conviction in any case other than for a capital offense, where the defendant appeals from the judgment, bail by sufficient sureties is allowable:
>
> (1) As a matter of right when the judgment imposes a fine only;
>
> (2) *As a matter of discretion in all other cases.* S.D.C.L. 23–26–4

S.D.C.L. 23–51–13 similarly provides:

A defendant who appeals from a judgment of conviction may be admitted to bail by the trial court or any judge of the Supreme Court in such sum as such court or judge deems proper in the following cases:

(1) As a matter of right when the appeal is from a judgment imposing a fine only;

(2) In other cases excepting in case of appeal from a judgment imposing sentence of death only when, in the opinion of the trial court or any judge of the Supreme Court to whom application is made, the ends of justice demand that the defendant be admitted to bail.

No bail shall be fixed or allowed after conviction in case of appeal from a judgment imposing sentence of death.

■ This Court recognized, in *United States ex rel. Bad Heart Bull v. Parkinson*, 381 F.Supp. 985, 987 (D.S.D.1974), that "these statutes, and the cases which have applied them, establish at a minimum that a defendant who otherwise fits the statutory specifications, is entitled to have his application for bail appeal fairly considered." Thus, in acting on a defendant's motion for appeal bond the courts of this state must comport with the mandates of due process.

■ The Constitution does not require that a defendant be released on bond pending appeal. "Where, however, bail is authorized by the state statute, even though it is not a right guaranteed by the federal Constitution, the arbitrary denial of bail violates due process under the fourteenth amendment, and allegations of such arbitrary denial are grounds for review by federal courts." *United States ex rel. Rainwater v. Morris, supra,* at 1255.

This Court considered the due process proscription against state arbitrariness in ruling on questions of appeal bonds in the two *Bad Heart Bull* decisions. *United States ex rel. Bad Heart Bull v. Parkinson*, 381 F.Supp. 985 (D.S.D.1974), and *United States ex rel. Bad Heart Bull v. Parkinson*, 385 F.Supp. 1265 (D.S.D.1974). (Even before these decisions, this Court implicitly

recognized the propriety of a 28 U.S.C. 2254 action to consider the state's reasonableness in setting an appeal bond. See *Langdeau v. State,* 323 F.Supp. 827, 828 (D.S.D.1971), aff'd 446 F.2d 507 (8th Cir. 1971.)

■ In *United States ex rel. Bad Heart Bull v. Parkinson,* 381 F.Supp. 985 (D.S.D. 1974), this Court held that the state trial court's denial of bail pending appeal violated the Fourteenth Amendment's due process clause. This conclusion was reached because the trial judge in making his ruling failed to indicate, on the record, any of the factors he considered and facts upon which he relied. Due process, it was determined, entitles the defendant to a hearing and a decision on his motion for bail pending appeal. In this regard, see *United States ex rel. Keating v. Bensinger,* 322 F.Supp. 784 (N.D.Ill.1971). Once the state afforded the relators a hearing and the trial judge indicated the factors he considered in denying appeal bond, this Court denied the relators a writ of habeas corpus. *United States ex rel. Bad Heart Bull v. Parkinson,* 385 F.Supp. 1265 (D.S.D.1974). In so holding, this Court noted, at 1266, the limited function a federal court exercises in reviewing a state court's decision on the question of bail:

> The question to be answered by a federal court is not whether the federal court might have decided the bail request differently in the first instance; the question is rather whether the decision of the state trial judge was
>
>> beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation. It would have to amount in its effect to legal arbitrariness in the administration of the bail right provided, so as to constitute a violation of due process, or to discriminatoriness in the application of the right as against petitioner, so as to constitute a violation of equal protection. *Mastrian v. Hedman,* 326 F.2d 708, 711 (8th Cir. 1964).

■ Here, this Court is not presented with a situation where the relator was denied bail without a hearing or without a

decision listing the factors and reasons supporting the denial. Russell Means was granted bail upon certain conditions set by the trial court. In that regard, it is beyond question that the trial judge is vested with such power. As the Eighth Circuit Court of Appeals noted in *United States v. Smith,* 444 F.2d 61, 62 (8th Cir. 1971), "the course of common law in England and the development of the common law and statutory law in the United States demonstrates that the courts have the inherent power to place restrictive conditions upon the granting of bail."

■ When relator's bail was revoked, the matter was fully considered by the state Supreme Court after a referee had been appointed to gather the salient facts. Relator's counsel were given opportunity to both orally contest the findings of the referee and to argue the constitutional implications of revoking bond. Further, when the South Dakota Supreme Court revoked bond it accompanied that order with a lengthy and detailed decision. Accordingly, this Court does not view the actions of the state to be violative of the Due Process Clause on the standards set down in *United States ex rel. Bad Heart Bull, supra.*

That conclusion does not end this Court's consideration of possible constitutional infirmity in the state court proceedings. As mentioned earlier, in order for a constitutional violation to exist in the state court proceedings there must be an abuse of discretion by the state court. *Langdeau v. State, supra,* at 828. An abuse of discretion is not confined to those situations where there is a total failure by the state to consider an application of a person entitled by state law to apply for bail. As the court noted in *United States ex rel. Cameron v. People of State of New York, supra,* at 184, a constitutional infirmity may arise when the state court renders "a decision on a ground which infringes on otherwise constitutionally protected areas, e. g. race, religion . . . ."

■ Relator contends that he is in state custody at this time solely because of a

state determination that he broke condition 4 of his appeal bond order, and that such custody is unconstitutional because condition 4, which prohibits most participation in American Indian Movement activities, unconstitutionally infringes upon his First Amendment freedoms of speech and association.

I agree. By the restrictions imposed under condition 4, relator is prohibited, for example, from making speeches on behalf of the American Indian Movement. He is prohibited from most organizational activities, from participating in American Indian Movement marches or assemblies, from recruiting members for the organization, or from even writing literature or letters on behalf of the movement. What the court is attempting to do through bail condition 4 is to regulate not only conduct in certain situations but more critically, to regulate the exercise of "pure speech" by the relator. This nation's laws and our dedication to the Bill of Rights will simply not permit this.

In *Leary v. United States,* 431 F.2d 85 (5th Cir. 1970), the Fifth Circuit Court of Appeals addressed the situation where bail pending appeal was denied on the basis that the defendant represented a danger to society. Like here, that denial of bail presented a serious restriction on the exercise of First Amendment freedoms. The court noted that if the restriction was on "mere advocacy" and conduct it would be an unconstitutional infringement of the First Amendment guaranty of freedom of speech. *Leary, supra,* at 89. See also *Hoffa v. Saxbe,* 378 F.Supp. 1221, 1239 (D.D.C.1974).

■ The First Amendment protects not only the freedom of speech, assembly and petition, but also implicit within the language of the amendment is the protection of the freedom of association. *Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Baird v. State Bar of Arizona,* 401 U.S. 1, 6, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *NAACP v. Button,* 371 U.S. 415, 430, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The freedom of association is "closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Shelton v. Tucker,* 364 U.S. 479, 486, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1970). The exercise of that right is clearly jeopardized by bail condition 4.

The First Amendment, to the fullest extent, protects all citizens. Numerous cases in the past decade have firmly established "that the Constitution, and notably the First Amendment, reaches inside prison walls." *Sobell v. Reed,* 327 F.Supp. 1294, 1303 (S.D.N.Y.1971). These cases demonstrate that if relator would have been imprisoned, rather than released on bail, his freedom of expression could not have been curtailed as extensively as it was under bail condition 4. See *Sostre v. McGinnis,* 442 F.2d 178 (2nd Cir. 1971), and *Diamond v. Thompson,* 364 F.Supp. 659 (M.D.Ala.1973).

As a unanimous Supreme Court stated in a significant prisoners' rights case:

> The First Amendment serves not only the needs of the polity but also those of the human spirit—a spirit that demands self-expression. Such expression is an integral part of the development of ideas and a sense of identity. To suppress expression is to reject the basic human desire for recognition and affront the individual's worth and dignity. *Procunier v. Martinez,* 416 U.S. 396, 427, 94 S.Ct. 1800, 1818, 40 L.Ed.2d 224 (1974).

If the state would have immediately incarcerated Russell Means upon his trial court conviction, it could not have stripped him of his human quality; it could not have closed his intellect to free thought and ideas; and it could not have silenced his voice from the free and open expression of ideas. And what the state could not constitutionally do behind the prison walls, will not be permitted by this Court in open society. The First Amendment protects the relator from such an abnegation of rights.

■ This Court recognizes that these First Amendment freedoms are not absolute. *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *CSC v. Letter Carriers,* 413 U.S. 548, 567, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Governmental

action may, in fact, impose restrictions upon the exercise of these rights. *Hoffa v. Saxbe, supra,* at 1235. However, for the state to justify an interference with these protected rights, it must demonstrate that (1) the state practice in question furthers an important or substantial governmental interest unrelated to the suppression of expression and (2) the limitation of First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved. *Procunier v. Martinez, supra.* See also *Buckley v. Valeo, supra,* 424 U.S. at 25, 96 S.Ct. 612, and *Hoffa v. Saxbe, supra,* at 1235.

■ This governmental interest that permits an infringement of First Amendment freedoms must reach the magnitude of a "compelling state interest." *Sobell v. Reed, supra,* at 1303; *Fortune Society v. McGinnis,* 319 F.Supp. 901, 905 (S.D.N.Y. 1970). In a court's consideration of the constitutional infringements and the state's interest justifying the restriction, the state's action "will be tested by 'stringent standards' and subjected to rigid scrutiny . . . ." *Sobell v. Reed, supra,* at 1303, and *Jackson v. Godwin,* 400 F.2d 529, 541 (5th Cir. 1968).

In matters of bail, the state interest is primarily twofold: (1) assurance of the defendant's future presence in court proceedings and (2) the protection of the public. *State of South Dakota v. Means, supra,* at 605; *State v. Olson,* 82 S.D. 605, 152 N.W.2d 176 (1967). This is distinguishable from the interests of the state in the matters of parole and probation. There the two primary interests of the state are (1) the hope that the criminal will rehabilitate himself and become a productive member of society; and (2) the recognition that less resources have to be devoted to the program since probation is much less expensive than imprisonment. *Jensen: The Search and Seizure Condition of Probation: Supervisory or Unconstitutional?,* 22 S.D. Law Rev. 199 (1977). In his well-reasoned dissent, Justice Morgan recognized this distinction:

Black letter law points out that the conditions of probation and parole are premised on the purpose of rehabilitation of the parolee or probationer whereas conditions of bond on appeal are primarily to secure attendance when required and for the protection of the public . . . ." *State of South Dakota v. Means, supra,* at 605.

For this reason, the Court does not view the decisions permitting conditions restricting the exercise of First Amendment freedoms of parolees and probationers as particularly determinative here. *United States v. Smith,* 414 F.2d 630 (5th Cir. 1969), rev. on other grounds *Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970); *Malone v. United States,* 502 F.2d 554 (9th Cir. 1974); *United States v. Kohlberg,* 472 F.2d 1189 (9th Cir. 1973); and *United States v. Albanese,* 554 F.2d 543 (2nd Cir. 1977).

■ Here the interests of the state in assuring the appearance of the defendant and protecting the public fail to demonstrate a compelling interest necessary to restrict First Amendment liberties. Relator, in his numerous contacts with the courts of this state, has always been faithful to required court appearances. As to protection of society, an invasion of First Amendment rights can not be predicated on a speculative concern of danger. *Procunier v. Martinez, supra,* at 420. Such a speculation can too easily be made. Here, this conviction of the relator represents his first and only felony conviction. The political movement to which he is so closely associated, the American Indian Movement, has not been involved in any violent activity since the affair at the Minnehaha County Courthouse which resulted in relator's conviction. Moreover, the American Indian Movement is neither an illegal, unAmerican, subversive or otherwise objectionable organization. Transcript of testimony of F.B.I. Director Kelly in *United States v. Butler, et al.,* July 7, 1976, at p. 9.

In this situation it appears that the real danger may be more in the denial of bail than in the present imprisonment of the

552

relator. In *Williamson v. United States,* 184 F.2d 280 (2nd Cir. 1950), it was argued by the government that bail should be denied to certain defendants associated with the Communist party because of the grave public danger. The Court responded:

> If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the Courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary judicial technique to supplement conviction of such offenses as those of which defendants stand convicted. *Williamson, supra,* at 282.

An infringement of protected freedoms by the state must be precisely drawn to accomplish that purpose without any unnecessary deprivation of rights. *Buckley v. Valeo, supra,* 424 U.S. at 25, 96 S.Ct. 612; *Hoffa v. Saxbe, supra,* at 1235. In considering that precision, this Court must look at the complete bail order. In that regard, it is apparent that relator was operating under fairly onerous conditions aside from condition 4. The relator was required to report to court services every 15 days and detail his activities for the next 15 days. He had to appear personally at court services every sixty days for a further report and questioning. Through these requirements which monitored the relator's daily activities, the interests of public safety were being fostered.

More importantly, conditions 2, 7 and 8 would seem to adequately protect the public safety where the previous conditions were insufficient. Any violent activity by the relator jeopardizing the safety of citizens would be covered by those conditions. Relator was required to obey *all* laws. His bond would be revoked if he was convicted on any criminal charge pending at the time of the bail order. In addition, it would be revoked if relator was *charged* with any crimes arising out of activity subsequent to the bail order. This Court does not see where condition 4 provides any additional protection. Condition 4 serves only to stifle relator's freedom of expression and association while giving judicial credence to the unfair and unjustified inference that violence is the shibboleth of the American Indian Movement.

One final consideration in the Court's decision is the nature of relator's present appeal of his state conviction. As mentioned, relator was convicted of the crime of "rioting to obstruct" on December 15, 1975. Obviously, this Court can not pass judgment on the merits of that appeal. However, it would appear that because of the complete lack of case authority under that charge in this state, relator's appeal can not be considered frivolous. I must assume that there are serious questions involved in that appeal; and as the court recognized in *Williamson v. United States, supra,* at 284, "(a)ll experience with litigation teaches that existence of a substantial question about a conviction implies more than a negligible risk of reversal." This concern can not be ignored for it would be impossible to compensate relator, if by chance, his incarceration was retrospectively deemed improper by a reversal of his trial court conviction. For this reason, the Court held, in *Bridges v. United States,* 184 F.2d 881, 884 (9th Cir. 1950), "where a meritorious question exists bail becomes a matter of right, not of grace." See also *Christoffel v. United States,* 89 U.S.App.D.C. 341, 196 F.2d 560 (1951).

Similarly, the Court can not ignore the fact that relator's state court conviction is nearly two years old. Yet, his appeal has not presently been heard by the state supreme court. It is estimated that oral arguments will not be heard until next spring. Conceivably it could be three years before relator is informed if his four year conviction for rioting is affirmed. With a four year sentence, relator would be eligible for parole in one year disregarding good time. S.D.C.L. 23–60–6. Therefore, if relator

were to remain imprisoned pending appeal, it is possible that even if his conviction is affirmed he will already have served longer than the law requires. In view of this, petitioner can not be considered to be of the same status as a probationer or parolee where the presumption of innocence has been fully stripped from a defendant and his punishment has been clearly defined.

In *Bridges v. United States, supra,* it was held that there was insufficient grounds for revocation of petitioner's bail. In a noteworthy comment the Court stated:

> A Bridges singled out and jailed by arbitrary judicial action while he is prosecuting with diligence his good faith appeal poses, to our minds, a more serious menace to the nation and its institutions than does a Bridges enlarged on bail in accordance with established rules of law and the decisions and practices of the courts. *Bridges, supra,* at 887.

Accordingly, this Court is convinced that the South Dakota courts could not revoke relator's bond on the basis of a violation of condition 4 of the bail order. This Court reaches this conclusion not on a determination that relator did not violate that condition, although this Court considers the evidence thin in support of the referee's determination, but rather the Court reaches its conclusion on a determination that, at the outset, condition 4 represented an unconstitutional restraint on relator's First Amendment liberties of speech and association.

The petition for a writ of habeas corpus is hereby granted, and it is hereby ordered that Russell Means be released from state custody. Counsel for relator shall prepare an appropriate order.

The foregoing memorandum decision constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.