**UNITED STATES of America, Appellee,**

**v.**

**Anthony John SPILOTRO, Appellant.**

**UNITED STATES of America, Appellee,**

**v.**

**John Phillip CERONE, Appellant.**

**UNITED STATES of America, Appellee,**

**v.**

**Joseph John AIUPPA, Appellant.**

**Nos. 84–1586, 84–1587 and 84–1623.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1984.

Decided Feb. 24, 1986.

Charles N. Shaffer, Rockville, Md., for appellant.

Lloyd B. Monroe, Kansas City, Mo., for appellee.

Before BRIGHT,* Senior Circuit Judge, McMILLIAN, Circuit Judge, and MAGNUSON,** District Judge.

McMILLIAN, Circuit Judge.

Anthony J. Spilotro, John P. Cerone and Joseph P. Aiuppa appeal from an order entered in the District Court[1] for the Western District of Missouri denying their mo-

---

\* Judge Bright assumed Senior Status June 1, 1983.

\*\* The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Eastern and Western Districts of Missouri.

tions to amend or modify certain conditions of pretrial release imposed by the magistrate [2] in pretrial proceedings. For reversal appellant argues that the district court abused its discretion in imposing as a condition of pretrial release that each defendant not knowingly associate with any person who has been convicted of a felony except when necessary for business purposes or the preparation of his defense. Appellants argue that the association condition violates the first amendment guarantee of freedom of association. Appellants also argue that the association condition violates the eighth amendment prohibition against excessive bail and the Bail Reform Act of 1966 which permits restrictions upon the defendant's associations as a condition of pretrial release only if reasonably necessary to assure the defendant's appearance in court as required. 18 U.S.C. § 3146(a)(2) (repealed and replaced by 18 U.S.C. § 3142(c)( ). Bail Reform Act of 1984, Pub. L.No. § 8.471, Tit. II, ch. 1, § 203(a). 98 Stat. 1976 (1983)).

For the reasons discussed below, we dismiss as moot the appeals of Aiuppa and Cerone and remand the Spilotro case to the district court with instructions.

## FACTS

In 1983 appellants were indicted with twelve other co-defendants and charged with conspiracy to travel in and use facilities in interstate commerce in aid of a racketeering enterprise, in violation of 18 U.S.C. § 371, and with seven substantive violations of the Travel Act, 18 U.S.C. § 1952, and faced a maximum sentence of 40 years and fines totaling $80,000 if convicted on each count. The government characterized the underlying prosecution as a complex case involving a lengthy, nationwide investigation of multiple defendants.

The defendants were charged with participation in a far-reaching, organized criminal enterprise consisting of appellants and others from five cities, who, over a ten-year period, traveled and used telephones in in-terstate commerce to acquire and maintain hidden interests in certain gambling casinos located in Las Vegas, Nevada, in violation of Nevada gambling laws and regulations, in order to skim and distribute substantial cash proceeds. According to the government, more than $2 million in gambling proceeds was illegally skimmed and distributed among the co-conspirators over a four-year period. The government specifically alleged that appellant Aiuppa and defendants Joseph Lombardo and Frank Peter Balistrieri used their influence with certain trustees of several Teamsters Union pension funds in order to obtain a multi-million dollar loan to enable Allen R. Glick to purchase the Las Vegas casinos involved in the skimming operation.

The government alleged that appellant Spilotro and others acted as the Las Vegas representatives for those co-conspirators, including appellants Aiuppa and Cerone, who lived in or near Chicago, Illinois. The government alleged 75 overt acts were committed in furtherance of the Las Vegas casinos skimming conspiracy, including telephone conversations and private meetings in defendants' homes and offices.

The indictment was returned on September 30, 1983. On October 11, 1983, each appellant was arrested in his respective home district upon execution of arrest warrants issued pursuant to the indictment. Appellants Aiuppa and Cerone were interviewed by pretrial services officers in the Northern District of Illinois and appeared before a federal magistrate there. Following a pretrial bail hearing, the magistrate set bond for each appellant at $40,000 to be secured by 10% deposit and directed each appellant to appear in the Western District of Missouri on October 26, 1983. Appellant Spilotro appeared before a federal magistrate in the District of Nevada and, after a pretrial hearing, was released on a $100,-000 unsecured bond and similarly ordered to appear in the Western District of Missouri.

**2.** The Honorable Calvin K. Hamilton, United States Magistrate for the Western District of Missouri.

In late October 1983 each appellant was interviewed in the Western District of Missouri by pretrial services officers and appeared for arraignment before a magistrate in the Western District of Missouri. Pursuant to the provisions of the General Order for Magistrates to Fix Bail (W.D.Mo. filed Feb. 12, 1971, effective May 3, 1971) (banc), upon each appellant's appearance, the magistrate proceeded to review the pretrial bail set by magistrates in other districts by automatically revoking the bail previously entered, remanding each appellant into the custody of the U.S. Marshal (appellants remained in the courtroom pending the new bail hearing), conducting a new bail hearing, and setting new and more onerous conditions of pretrial bail, including travel and association conditions. Each appellant was released after agreeing to abide by the conditions of release and, in the case of appellant Aiuppa, after posting bond.

Motions to modify certain of the pretrial release conditions, including the association conditions, were granted in part by the magistrate, but the magistrate denied defense motions for further modification of the pretrial release conditions. *United States v. DeLuna*, No. 83–00124–01/15–Cr–W–8 (W.D.Mo. Apr. 9, 1984) (memorandum and order). The magistrate's order denying further modification was affirmed by the district court. *United States v. DeLuna*, No. 83–00124–08/10–Cr–W–8 (W.D.Mo. Apr. 24, 1984) (order). These appeals followed.

## APPELLATE JURISDICTION

■ On January 21, 1986, appellants Aiuppa and Cerone were found guilty by a jury on all counts. Because the pretrial bail issues raised in their appeals became moot following their convictions, we dismiss their appeals. *See Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam); *United States v. Hollister*, 746 F.2d 420, 426 n. 18 (8th Cir.1984). Appellant Spilotro was severed from the other defendants and is to be tried separately. His appeal remains a "live" controversy.

First, we address the question of the appealability of the district court order affirming the magistrate's denial of appellant's motion for modification of the conditions of pretrial release. *See* 18 U.S.C. § 3147(b) (now repealed); Fed.R.App.P. 9(a). Appellant was not detained but released on bond subject to the conditions described above. We directed the parties to submit supplemental briefs on the issue of appellate jurisdiction.

Appellant argues that the district court order is final and appealable because it is an arbitrary exercise of discretion which violates constitutional rights, citing *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 1 (1951), and *United States v. Foster*, 278 F.2d 567, 569 (2d Cir.), *cert. denied*, 364 U.S. 834, 81 S.Ct. 48, 5 L.Ed.2d 60 (1960). Alternatively, appellant argues that the district court order is appealable under the collateral order doctrine, citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

The government argues that there is no appellate jurisdiction under either 18 U.S.C. § 3147(a) or (b) (now repealed) because appellant was not detained after denial of a motion to amend an order imposing conditions of release or detained as a result of conditions of release having been imposed or amended. The government also argues that in *Stack v. Boyle*, unlike the present case, the defendants were in custody, 342 U.S. at 3–4, 72 S.Ct. at 2–3, and had challenged the bail as excessive, which, because it was imposed in violation of statutory and constitutional standards, the district court "had no discretion to refuse to reduce." *Id.* at 6, 72 S.Ct.at 4; *see United States v. Foster*, 278 F.2d at 570 (Friendly, J., concurring as to the appeal from the bail order).

The Bail Reform Act of 1966 set forth the procedure for appellate review of release orders in non-capital cases. 18 U.S.C. § 3147 (now repealed). Any person who was detained, or released upon a condition requiring his or her return to custody after specified hours, had to first file a motion to

amend the order before the court which had original jurisdiction over the offense with which he or she was charged. *Id.* § 3146. If a person was detained after the court denied the motion to amend the conditions of release or after conditions of release were imposed or amended by the court which had original jurisdiction over the offense charged, then the person could appeal to the court having appellate jurisdiction. *Id.* § 3147(b); *see generally* 3A C. Wright & A. Miller, Federal Practice and Procedure §§ 771–772 (1982).

Also relevant to appellate jurisdiction are Fed.R.App.P. 9(a) and *Stack v. Boyle.* Fed.R.App.P. 9(a) provides for "[a]n appeal authorized by law from an order refusing or imposing conditions of release [before conviction]."

> The language of the rule, "[a]n appeal authorized by law from an order refusing or imposing conditions of release," is intentionally broader than that used in 18 U.S.C. § 3147 in describing orders made appealable by that section. The summary procedure ordained by the rule is intended to apply to all appeals from orders respecting release, and it would appear that at least some orders not made appealable by 18 U.S.C. § 3147 are nevertheless appealable under the *Stack v. Boyle* rationale.

Fed.R.App.P. 9(a) advisory committee note (1967).

*Stack v. Boyle* held that certain release orders were final, collateral orders and appealable under 28 U.S.C. § 1291. 342 U.S. at 6, 72 S.Ct. at 4, *citing Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 545–57, 69 S.Ct. at 1225–26. In *Stack v. Boyle* the petitioners alleged that the bail was excessive. As characterized by the Supreme Court, the "[p]etitioners' motion to reduce bail did not merely invoke the discretion of the District Court setting bail within a zone of reasonableness, but challenged the bail as violating statutory and constitutional standards." 342 U.S. at 6, 72 S.Ct. at 4. The Court held that because the district court has "no discretion to refuse to reduce excessive bail, the order

denying the motion to reduce bail is appealable as a 'final decision' of the District Court under 28 U.S.C. § 1291." *Id.*

We conclude that we have appellate jurisdiction under 28 U.S.C. § 1291 to review the district court's order, even though appellant was not detained. The district court order is final; it is collateral to the issue of guilt or innocence; it involves a risk of irreparable injury to constitutional rights; and it involves an unsettled question of law which, if not reviewed, could evade ordinary appellate review. As did the petitioners in *Stack v. Boyle*, appellant argues that the district court does not have discretion to impose, as a condition of pretrial release, this type of restriction upon his right to freedom of association and therefore did not act with a "zone of reasonableness."

Under similar circumstances, the Second Circuit found appellate jurisdiction in *United States v. Foster*, 278 F.2d at 569, a case decided before enactment of the Bail Reform Act of 1966. In *Foster* the defendant, who had been released on bail before trial, sought appellate review of the district court's refusal to modify the territorial limitation of his bail conditions in order to enable him to seek free medical treatment in the Soviet Union and Czechoslovakia. The Second Circuit held that it had appellate jurisdiction "in the rare case where the movant contends that denial of the motion is an arbitrary exercise of discretion and violates his [or her] constitutional rights," *id.* at 569, although the court acknowledged that its recognition of the appealability of the district court order was "somewhat of an extension of the *Stack* case." *Id.*

The Bail Reform Act of 1984 now expressly provides for review of release orders and detention orders, 18 U.S.C. § 3145(a), (b), and for appeal, without regard to the custodial status of the defendant, "from a release or detention order, or from a decision denying revocation or amendment of such an order, [to be] governed by the provisions of section 1291 of title 28 and section 3731 of this title." *Id.*

§ 3145(c). *See United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir.1985) (banc), *citing United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir.1985) (Bail Reform Act of 1984 expanded appellate review).

## AUTHORITY TO AMEND CONDITIONS OF RELEASE

Appellant first challenges the authority of the magistrate in the Western District of Missouri to review, pursuant to the automatic bail review policy in the Western District of Missouri, conditions of release imposed by magistrates in other districts. A magistrate in the District of Nevada initially set bail for appellant. Appellant argues that there is no statutory provision authorizing such review, particularly in the absence of a motion by the government and proof of any intervening change of circumstances.

The automatic review policy is authorized by a written order entered by the District Court for the Western District of Missouri. General Order for Magistrates to Fix Bail (W.D.Mo. filed Feb. 12, 1971, effective May 3, 1971) (banc). Pursuant to this order "all orders of non-resident district judges, magistrates or circuit judges of circuits other than the Eighth Circuit, fixing bail for defendants arrested in this District and brought before the magistrates ... are hereby, set aside" and directs magistrates for the Western District of Missouri, in accordance with the Bail Reform Act of 1966, to "fix bail of defendants arrested or appearing in this District upon indictments and informations returned or filed in other districts, any order of any non-resident district judge, magistrate or circuit judge of a circuit other than the Eighth Circuit to the contrary notwithstanding." *Id.* at 1–2.

By its express terms, the General Order does not technically apply to appellant. Although bail for appellant was set by a non-Western District of Missouri magistrate, appellant was not arrested in the Western District of Missouri and did not appear in the Western District of Missouri upon indictments returned in other districts. Appellant has not challenged the district court's delegation of authority to the magistrate to act in bail matters. *See* 28 U.S.C. § 636(a)(2).

 We hold that the magistrate, even though not the releasing officer under 18 U.S.C. § 3146(e) (now repealed), of the court which has original jurisdiction over the offense charged has the authority to amend conditions of release previously set in another district by another magistrate. *Cf. United States v. James*, 674 F.2d 886 (11th Cir.1982) (upon government motion, magistrate in one district and district judge in another district); *United States v. Zuccaro*, 645 F.2d 104 (2d Cir.) (per curiam) (upon government motion; magistrate and district judge in same district), *cert. denied*, 454 U.S. 823, 102 S.Ct. 110, 70 L.Ed.2d 96 (1981).

The issue in both *United States v. Zuccaro* and *United States v. James* was whether the district court having original jurisdiction over the offense charged could amend the defendant's conditions of release, on the motion of the government, even though the district court was not the releasing officer under 18 U.S.C. § 3146(e) (now repealed). The facts in *United States v. James* are similar to those in the present case.[3] The *James* defendants were indicted in one district and voluntarily surrendered and initially appeared before a magistrate in another district, where bond was set at $5 million property bond for one defendant and a $1 million bond (consisting of $450,000 corporate surety, $50,000 personal surety and $500,000 property) for the other defendant. Subsequently pretrial proceedings began in the district court of original jurisdiction, where the government

---

**3.** *United States v. Zuccaro*, 645 F.2d 104, 105 (2d Cir.) (per curiam), *cert. denied*, 454 U.S. 823, 102 S.Ct. 110, 70 L.Ed.2d 96 (1981), involved a magistrate and district judge in the *same* district. The defendant was arrested and brought before a federal magistrate who set bond at $150,000. The next day the prosecution filed a motion to increase the bail to $500,000. After a hearing the district court set bail at $350,000. The defendant appealed, arguing that the district court could not under 18 U.S.C. § 3146(e) (now repealed) amend the bail previously set unless the magistrate's order was clearly erroneous, 28 U.S.C. § 636(b)(1)(A).

requested a much higher bond. The district court did not grant the government's specific request but amended the bonds previously granted to require $2 million cash or corporate surety for each defendant. Neither defendant could post the amended bond.

The Eleventh Circuit adopted the *Zuccaro* analysis. *United States v. James*, 674 F.2d at 889–90, *citing United States v. Zuccaro*, 645 F.2d at 105–06. First, the *James* court rejected the defense argument that 18 U.S.C. § 3143 (now repealed) limits the authority of the district court to increase a bond under 18 U.S.C. § 3146(e) (now repealed) unless evidence is presented to show that the defendant has violated or is about to violate a condition of release. 674 F.2d at 889. The court stated that

> [t]he "shall require" language of § 3143 indicates that an increase in bail is *mandatory* upon the proper proof that the defendant is about to abscond. Section 3146, on the other hand, is permissive, and enables, but does not require, amendments to conditions of release at any time and for reasons other than the possibility the accused will abscond. Moreover, it would be illogical to hold that Congress, in stating that a judicial officer may "at any time" impose additional conditions of release, in fact intended for additional conditions to be permitted only upon proof the defendant was about to leave the jurisdiction.

*Id.* (emphasis in original).

Next the *James* court considered the scope of the authority to amend granted in § 3146(e). Section 3146(e) grants the "judicial officer ordering the release of a person on any condition" the authority to amend the order to impose additional or different conditions of release. In *United States v. James*, as in the present case, the conditions of release were not amended by the releasing officer but by the magistrate for the district court having original jurisdiction over the offense charged. The *James* Court adopted the reasoning of the Second Circuit in the *Zuccaro* case and held that the district court had authority under

§ 3146(e) to amend the conditions of release. 674 F.2d at 890.

The [*Zuccaro*] court reasoned that because conditions of bail govern release "pending trial," 18 U.S.C. § 3146(a), the conditions necessarily extend into a period during which the judge with original jurisdiction over the case would be exercising that jurisdiction as to pretrial matters. He [or she] therefore must have the authority to make such orders as he [or she] deems necessary to ensure the presence of the defendants at trial, and the government should be able to invoke that authority. The [*Zuccaro*] court, moreover, noted that in many cases (such as the case before us) the defendant's initial appearance would occur in a district other than that of prosecution; in such cases, insisting that the government return to the original releasing officer to request amendments to the conditions of bail would be a gross waste of resources. Finally, the [*Zuccaro*] court concluded that because the range of officers empowered to set initial release conditions covered a wide variety of persons, including local justices of the peace, Congress likely did not intend that the conditions be immune from supervision by the trial judge.

*Id.*

In both *United States v. James* and *United States v. Zuccaro* the government filed a request for amendment of the conditions of release. In the present case, however, the magistrate's review and amendment of the conditions of release was not initiated by the government. The absence of a government motion to amend should not affect the validity of the above analysis, which we have cited with approval. The power of the trial court to amend conditions of release is not circumscribed by the requirement of a request from the government or from the defense. *Cf. United States v. Maull*, 773 F.2d at 1481–82 (Bail Reform Act of 1984; district court conducts de novo review of magistrate determination in bail matters); *United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir.

1981) (Bail Reform Act of 1966 conferred "a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer as unfettered as it would be if the district court were considering whether to amend its own action"). We therefore hold that § 3146(e) granted the court with original jurisdiction over the offense charged the authority to amend sua sponte and at any time the conditions of release. To hold otherwise would sharply restrict the discretion of the trial court to determine pretrial matters. In addition, requiring a remand of the case to the releasing judicial officer in order to amend conditions of release would waste limited judicial resources.

## VALIDITY OF ASSOCIATION CONDITION

Appellant argues that the association condition impermissibly reflects consideration of an inclination to commit other crimes. Appellant argues that such a condition is not necessary to reasonably assure his appearance as required and for that reason is inconsistent with the Bail Reform Act of 1966 (now repealed and replaced by the Bail Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1976 (1984), *codified in* 18 U.S.C. §§ 3141–3156). Appellant also argues that the association condition infringes his first amendment right to freedom of association.

The government argues that although the prevention of future crime is an incidental benefit of the association condition, the primary purpose of the association condition is to provide the courts with a measure of assurance of appellant's submission to legal process. Brief for Appellee at 29. The government argues that appellant's observance of the association condition is an indication of the likelihood that appellant will appear in court as required. The government thus argues that the association condition protects the processes of the courts and advances the administration of criminal justice.

Conditions restricting association are expressly authorized by the bail statute. 18 U.S.C. § 3142(a)(2) (now repealed and replaced by 18 U.S.C. § 3142(c)(2)(D)). There are, however, few reported decisions examining the validity of association restrictions imposed as conditions of pretrial release. In *United States v. Cook*, 428 F.2d 460, 461 (5th Cir.1970) (per curiam), the appellate court summarily upheld pretrial bail conditions prohibiting association with "any convicted felons, or any persons of bad reputation, or any other persons on either probation or parole." The court noted that association conditions are matters within the discretion of the issuing authority "as long as those conditions are necessary to reasonably assure the appearance of the person as required." *Id.* In *United States v. Cramer*, 451 F.2d 1198, 1200 (5th Cir.1971), the appellate court vacated pretrial bail conditions which restricted a youthful defendant's associates to protect him from "fast company," because there was no evidence that the conditions were intended to reasonably assure his appearance in court or were related to that purpose. *Id.*

In the present case the magistrate's rationale for the association condition focused narrowly upon the probable impact that the filing of additional criminal charges would have upon appellant's ability to appear as required rather than upon the prevention of future crime per se. The magistrate stated that in his opinion, based upon over 13 years of experience as a federal magistrate, the

> association of a defendant with persons having prior felony convictions often results in the defendant being unable to appear before the Court because such association has led to the filing of state charges or the filing of federal charges followed by arrest and incarceration which makes it physically impossible for the defendant to return to Court. Further, the filing of additional charges, either state or federal, increase[s] the risk of flight.

*United States v. DeLuna*, No. 83–00124–01/15–CR–W–8, slip op. at 34–35 (W.D.Mo. Apr. 9, 1984) (memorandum and order of magistrate).

The premises underlying the association condition are thus (1) felons are more likely to commit crimes, (2) persons who knowingly associate with felons are more likely to commit crimes because of that association and as a result are more likely to face prosecution in state or federal court, and (3) additional prosecution will interfere with the defendant's ability to appear as required on the initial charges. If we accept the underlying premises as true for purposes of analysis, the association condition is intended to reasonably assure the defendant's appearance as required and is related to that purpose.

■ Appellant argues, however, that conditions restricting association with felons are uniformly imposed in the Western District of Missouri. Appellant thus argues that the magistrate failed to exercise its discretion in imposing the condition and that the failure to exercise discretion is an abuse of discretion. We agree. The order denying the motion for modification set forth the rationale for the association condition generally, but it did not state any reasons why the association condition was necessary to reasonably assure appellant's appearance as required. The imposition of association conditions is a ·discretionary matter which is not necessarily appropriate for all defendants.

Accordingly, we remand the case to the district court with instructions to refer the case to the magistrate for further consideration. On remand the magistrate should decide whether the association condition is appropriate for this individual defendant and, if so, set forth the reasons for its decision. The magistrate may in its discretion allow the parties to submit additional evidence or supplement the record.

Because of our decision to remand the case for further consideration, it is not necessary to reach appellant's constitutional argument. However, we believe the following observations may be of some guidance to the magistrate on remand.

■ The association condition at issue here is a condition of *pretrial* release. For this reason, the cases upholding conditions which restrict the freedom of association of persons who are incarcerated [4] or who have been conditionally released following conviction [5] are not dispositive. "[I]ncidental limitations on First Amendment freedoms" can be sustained only if justified by "a sufficiently important governmental interest" which is "unrelated" to the affected first amendment freedom and "no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391

---

4. For pretrial detainees or convicted prisoners, the fact of confinement itself necessarily limits their retained constitutional rights, including the first amendment right to freedom of association. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 545–46, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).

5. Similar conditions restricting the freedom of parolees and probationers to associate with persons who have been convicted of crimes have been upheld against first amendment challenges. *See, e.g., United States v. Albanese*, 554 F.2d 543 (2d Cir.1977) (probation condition restricting association to "law-abiding persons"); *Birzon v. King*, 469 F.2d 1241 (2d Cir.1972) (parole condition restricting association with persons having criminal records); *cf. Malone v. United States*, 502 F.2d 554, 556–57 (9th Cir. 1974) (probation condition restricting association with or participation in American Irish Republican movement or Irish Catholic organizations upheld for defendant convicted of unlawful exportation of firearms related to emo-

tional involvement with Irish Republican movement), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). *But cf. Leary v. United States*, 431 F.2d 85 (5th Cir.1970) (denial of bail pending appeal because defendant advocated illegal drug use held unconstitutional denial of freedom of speech); *United States ex rel. Means v. Solem*, 440 F.Supp. 544, 550–53 (D.S.D.1977) (condition of bail pending appeal restricting political advocacy held unconstitutional denial of freedom of association). For persons conditionally released on probation or parole, conditions restricting the freedom to associate are an attenuated form of the infringement of freedom of association inherent in confinement. The association conditions imposed upon parolees or probationers are reasonably and necessarily related to the substantial governmental interests in their rehabilitation and in the protection of the public from further crime. *United States v. Albanese*, 554 F.2d at 546 (probation); *Birzon v. King*, 469 F.2d at 1243 (parole); *United States ex rel. Means v. Solem*, 440 F.Supp. at 551.

U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968); *see also United States ex rel. Means v. Solem*, 440 F.Supp. 544, 551 (D.S.D.1977). In the present case the association condition furthers the compelling governmental interest in assuring the appearance in court as required of persons charged with crimes. This interest involves more than the convenient management of trial dockets; it implicates the government's compelling interest in the effective administration of criminal justice. The association condition operates in a content-neutral fashion by restricting association solely on the basis of prior criminal conviction; it does not restrict association on the basis of any particular belief or idea. The association condition also remains in effect for a limited period of time, in no way restricts appellant's association with any other persons and even permits appellant to associate with felons when necessary for business purposes or for the preparation of his defense. *Cf. Bell v. Wolfish*, 441 U.S. 520, 550–51, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979) (restriction upon receipt of hardback books by pretrial detainees); *Leary v. United States*, 431 F.2d 85, 89 (5th Cir.1970) (advocacy of illegal drug use); *United States ex rel. Means v. Solem*, 440 F.Supp. at 550 (advocacy of American Indian movement). However, any condition restricting association should be limited to only that necessary to assure the individual defendant's appearance when required in the district court.

Accordingly, we dismiss appeals No. 84–1587 and No. 84–1623 and remand appeal No. 84–1586 to the district court for further proceedings consistent with this opinion.